THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LEMUEL TAYLOR *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 1—90—3074, 1—90—3075 cons.

Opinion filed September 21, 1992.—Rehearing denied November 23, 1992.

Daniel J. Stohr, of Chicago, for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David Stabrawa, and Michael J. Pugh, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendants were convicted of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, par. 1401 (a)(2)) and sentenced to 16 years in prison. On appeal defendants argue that: (1) the trial court erred in denying their motion *in limine* to prohibit the introduction of testimony regarding the results of tests performed on the controlled substance, where the physical evidence was destroyed; (2) the court abused its discretion by assisting the State, through questioning, to proffer a police officer as an expert witness; (3) they were denied effective assistance of counsel because counsel failed to request jury instructions on the lesser included offense of possession; and (4) the court abused its discretion in sentencing them to 16 years in prison, where it commented, "So much for rehabilitative potential."

At trial the testimony revealed the following facts. About 9 p.m. on October 19, 1988, Officers Martinez and Lockridge received a call from their dispatcher informing them that an anonymous person called to report that individuals were selling narcotics from a green, four-door Oldsmobile in the driveway at 255 West 104th Place in Chicago. The officers drove to the address, where they observed a car parked on the south side of the street. Three males were inside the car. The officers drove around the corner to an alley about one block

away where they were able to observe defendants from about 50 feet away.

Officers Martinez and Lockridge radioed for assistance and Officers Flagg and Daniels responded. It was dark outside, but there was artificial lighting along the street. The defendants were kept under surveillance for 45 minutes. On three separate occasions the officers observed a car drive up and park, the driver exit the car, and approach defendant Taylor's car. On each occasion the person leaned into the driver's side window and went through a "counting motion." The officers then observed these people hand something to defendant Taylor on the driver's side, and he in turn gave each person a package. The officers could not see whether it was money or packages changing hands.

After the third transaction, Martinez gave the arrest signal and drove his car in front of the driveway blocking the path of Taylor's car. The officers exited their car and ordered the defendants to exit their car. Martinez testified at that time the officers were standing three feet away and could see through the windshield as defendant Taylor passed an object to defendant Wells, who bent down and placed it underneath the seat. Officer Martinez then went to the driver's side and Officer Lockridge went to the passenger side. The defendants exited the car and a pat down search was conducted. The officers found $1,090 and a beeper on defendant Taylor. Wells and a third person were also searched.

Officer Martinez, while conducting a search of the car, observed a cellular telephone on the front seat. Defendants were never observed using the telephone, nor was the telephone fingerprinted. Martinez observed a bulge underneath the floor mat and turned the mat. He observed a large clear plastic bag containing white powder. The bag was tied at the top. He also noticed that there was a hole in the floor and that it appeared as if the bag was hanging from a jagged edge in the floor. There was also a hand-held scale hanging from the rearview mirror. The officers never saw defendants use the scale, nor did they have it fingerprinted. Defendants were arrested and taken to the police station.

Officer Martinez testified that he weighed the plastic bag and that it weighed 16 grams. He then inventoried, sealed, and initialed the evidence. The evidence was then taken to the crime lab. Both parties stipulated to the chain of custody of all the items that were inventoried.

Jose Mantilla testified that he was a forensic chemist who had worked for the Chicago police department for three years. The court

recognized Mantilla as an expert in the field of forensic chemistry, qualified to render opinions as to the identity and presence of controlled substances. He stated that he weighed the powder and found it to weigh 16.53 grams. He then analyzed it by performing tests on the substance and concluded that the substance contained cocaine.

Officer Lockridge testified that she had been involved in several transactions as a "buy" undercover officer. She had made over 100 arrests, 90% having to do with cocaine. She testified that the usual drug transaction involved first obtaining the beeper or telephone number of a seller, then establishing the quantity, price, location, and time for the sale to take place. She stated that 14 grams is considered a large amount.

For trial, Officer Lockridge withdrew the physical evidence, which consisted of the beeper, cellular telephone and scale, from the evidence and recovered property section of the Chicago police department, but was told that the cocaine had been destroyed because of the length of time it took for the case to reach trial. This was not the normal procedure for the police department. She stated that the money recovered was forwarded to the Illinois State Police accounts.

Defendant Taylor testified that on the night of the incident, defendant Wells and his cousin came to Taylor's home about 9 p.m. The three changed cars and rode in Taylor's car to a gas station where they purchased beer. They then drove to Taylor's grandfather's home and backed into the driveway. He stated that an unmarked car drove into the driveway and that Wells and the officer exchanged words. Wells testified that the previous night the same officer had harassed him. Wells stated that he was "running his mouth" and Officer Lockridge handcuffed him and put him in the detective's car. The officers then brought defendant Taylor back to the car, handcuffed the two defendants together and took them to the police station. Defendant Wells stated that he was charged with disorderly conduct, and that later an officer came in, put the bag of cocaine in his face and said, "He gave this to you and you put this under the seat."

Earl T. Wynn, defendant Wells' grandfather, testified that on the day of the incident he saw both defendants as Taylor backed the car into his driveway. Wynn claimed that before he got to the door, he saw the officers pull into the driveway and defendant Wells told him that the police were "messing" with him. Wynn testified that Wells was hollering so he tried to calm him down. He stated that Officer Lockridge said "Let's put the handcuffs on him and put him in my car." Wynn stated that the officers searched his van, his daughter's car, and a station wagon that were parked in his driveway, by shining

a light into the first two cars and running their hands under the wheel of the van. Wynn testified that the officer told him that defendant was being arrested for disorderly conduct.

Before trial, defense counsel filed a motion *in limine* to exclude any testimony concerning the results of tests performed on the substance recovered from defendant Taylor's car based on the fact that the substance had been destroyed after the completion of testing. The court denied that motion. Defense counsel also objected to the State's attempt to qualify Martinez as an expert witness, but the court, after asking Martinez three questions, allowed him to testify as an expert. Lockridge was also allowed, over counsel's objection, to testify as an expert as to the manner in which drug transactions are conducted.

At the conclusion of trial, defendants were convicted of possession of a controlled substance with intent to deliver and sentenced to 16 years in prison.

Defendants first argue that the trial court erred in denying their motion *in limine* to prohibit the introduction of testimony regarding the test results performed on the cocaine. They contend that the State's destruction of the substance before trial deprived them of due process. The State maintains that defendants did not show that the cocaine was destroyed in bad faith, and that it presented sufficient evidence at trial regarding the weight of the cocaine.

Although the presence of narcotics may be proved by circumstantial evidence and the substance in question need not be produced at trial (*People v. Lopez* (1982), 107 Ill. App. 3d 792, 438 N.E.2d 504), a defendant's fundamental right to know of adverse evidence and to have an opportunity to rebut it are infringed when the State fails to preserve physical evidence which is crucial to his defense. (*People v. Taylor* (1977), 54 Ill. App. 3d 454, 369 N.E.2d 573.) Further, the right of an accused to be informed of exculpatory evidence is secured both under the Federal Constitution (*Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194), and by Illinois Supreme Court Rule 412(c) (87 Ill. 2d R. 412(c)). (*People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569.) In *Brady*, the Supreme Court held that a criminal defendant has a right to have access to evidence that is "material" either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. That right is not absolute.

In *California v. Trombetta* (1984), 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528, the Supreme Court addressed the duty of the State to take affirmative steps to preserve potentially exculpatory evidence on behalf of defendants. In that case, each defendant was stopped by the police on suspicion of drunk driving and submitted to a

breathalyzer test which showed a blood-alcohol concentration level substantially higher than the level at which a driver is presumed to be intoxicated. They were arrested for driving while under the influence of liquor. Prior to trial, defendants filed a motion to suppress the test results on the grounds that the State failed to preserve samples of defendants' breath. In denying this motion, the court stated that the State's action in destroying the breath samples was not a violation of due process. The court reasoned that the State did not destroy the samples in a calculated effort to circumvent the disclosure requirements of *Brady*.

The *Trombetta* court stated:

> "Whatever duty the Constitution imposes on the States to preserve evidence, the duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. \*\*\* [E]vidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (467 U.S. at 488-89, 81 L. Ed. 2d at 422, 104 S. Ct. at 2534.)

Thus, under *Trombetta* and *Jordan* a defendant must show that the evidence possessed exculpatory value that was readily apparent in order to show that there has been a due process violation.

In this case, prior to trial the assistant State's Attorney advised defense counsel that the substance found in defendant Taylor's automobile was not available for trial because it had been destroyed after being tested. Subsequent to the denial of the defendant's motion *in limine*, Jose Mantilla testified that on November 26, 1988, he conducted tests on the substance which had been recovered from defendant Taylor's automobile. He testified that the substance weighed 16.53 grams and tests indicated the presence of cocaine. Defendants maintain that in the absence of the actual cocaine it was impossible to challenge the weight of the substance. They contend that this fact was significant because if the substance weighed less than 16 grams, defendants would not have been eligible for sentencing as Class X offenders.

Although the evidence was destroyed, the State was able to use the testimony of others to establish the weight of the substance. Defendants contend, however, that destruction of the substance after testing eliminated their ability to dispute the test results by evidence of equal integrity and persuasiveness.

In this case, although the evidence was destroyed, the State offered the testimony of Officer Martinez, who testified that the sub-

stance weighed 16 grams. He testified that the substance was inventoried, sealed and taken to the crime lab for analysis. Martinez also testified that he conducted a search of the car and observed a cellular telephone on the front seat. His testimony was corroborated by that of Officers Flagg and Lockridge. Further, Jose Mantilla, a forensic chemist, testified that the substance tested positive for cocaine and weighed 16.53 grams. Moreover, defense counsel stipulated to the chain of custody of the cocaine and never made an attempt to challenge the weight of the substance before trial.

Although the unnecessary destruction of material evidence is condemned (*People v. Ellis* (1981), 93 Ill. App. 3d 79, 416 N.E.2d 1174), there is no evidence in the record that the evidence was destroyed in bad faith. We believe that the State provided sufficient circumstantial evidence that the substance obtained from defendants remained in the State's custody until it was destroyed, and that the substance weighed more than 15 grams. Having stipulated to the chain of custody, and having failed to challenge the weight of the substance until the eve of trial, we cannot say that the court erred in denying defendants' motion *in limine* to prohibit testimony regarding the results performed on the substance.

Defendants next argue that the trial court abused its discretion by asking questions of a witness whom the State attempted to qualify as an expert witness. At trial, the State presented Officer Martinez on the stand and began eliciting questions to qualify him as an expert with regard to the use of hand-held scales in drug transactions. The trial court inquired as to his qualifications as well:

"THE COURT: Officer Martinez, have you ever seen a hand-held scale used in any fashion?

THE WITNESS: I had it demonstrated to me.

THE COURT: By whom?

THE WITNESS: By an offender that I had arrested.

THE COURT: Once?

THE WITNESS: Several occasions, until I was familiar with how it works.

THE COURT: All right. I will permit you to step down and tell the ladies and gentlemen of the jury, in your opinion as to how it may work or how they are used."

It is well established that an individual will be permitted to testify as an expert if his experience and qualifications afford him knowledge which is not common to lay persons and where such testimony will aid the trier of fact in reaching its conclusion. (*People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569.) The burden of establishing the quali-

fications of an expert witness is on the proponent of his testimony, and it is within the discretion of the trial court to determine whether the witness has been qualified. *People v. Park* (1978), 72 Ill. 2d 203, 380 N.E.2d 795.

The record reveals that during a sidebar, defense counsel advised the court that he objected to the State's line of questioning on two grounds: (1) that it was narrative; and (2) that the witness was purely speculating as to how the hand scale was used, what it was used for, the fashion in which it was used, and who used it. He pointed out to the court that the witness never testified that he saw the defendants use or touch the scale, and that there was no testimony to establish that the witness was an expert as to the use or function of the scale. The State then explained that it would lay those foundational questions. The court itself commented "When were you going to do it, after he testified or before?" The court then stated that it would allow the testimony if the proper foundation was laid.

Officer Martinez then testified that he had been a tactical officer for three years, that he had been involved in about four arrests each week, and about two narcotic surveillances each week. Over defense counsel's objection, the State then attempted to have Officer Martinez demonstrate how the scale is used. The court stated that it did not think the State had laid a proper foundation relative to the officer's knowledge of the hand-held scale. The State then attempted a third time to tender Officer Martinez as an expert witness, but defense counsel objected. The court then asked the questions which defendants allege were improper.

While it does appear that the court was assisting the State to ascertain the information necessary for Officer Martinez to be qualified as an expert, the court is free to examine witnesses in its discretion, provided it does not become an advocate, abandoning its function as an impartial tribunal. (*People v. Griffin* (1990), 194 Ill. App. 3d 286, 550 N.E.2d 1244.) The court in this instance did not seem to be clarifying any confusion on its part, or assisting the jury to understand the testimony of the officer. In fact, based on its earlier comments, it appears to have asked the questions that it believed were necessary to determine whether Officer Martinez was an expert. The court had stated earlier that "I will permit him to testify succinctly and before the jury as to how it works, assuming, of course, the proper foundation is laid." By asking the questions of the officer, it is apparent that the court believed the State had not laid the proper foundation. However, we do not find that the court's questioning

amounted to advocacy. Thus, any error that may have occurred was harmless.

Defendants next argue that they were denied effective assistance of counsel because trial counsel failed to request jury instructions on the lesser included offense. Specifically, they contend that the questionable weight of the cocaine as established by the State was between 16 and 16.53 grams, and that the jury reasonably could have concluded that the quantity of alleged controlled substance possessed by defendant was less than 15 grams.

In *People v. Canet* (1991), 218 Ill. App. 3d 855, 578 N.E.2d 1146, the defendant was charged with possession of over 15 grams of cocaine and, throughout the trial, defendant counsel's strategy was to prove that the defendant did not have knowledge or possession of more than 15 grams. Defense counsel failed to request jury instructions on the lesser included offense and defendant was convicted of possession with intent to deliver more than 15 grams of a controlled substance. In affirming the trial court's decision, the appellate court stated that defense counsel's failure to request jury instructions on the lesser included offense was a tactical decision lying properly within trial counsel's province and, thus, did not constitute ineffectiveness. *Canet*, 218 Ill. App. 3d at 863.

Defendants cite to *People v. Crenshaw* (1990), 202 Ill. App. 3d 432, 559 N.E.2d 1051, for the proposition that it is error to fail to give a lesser included offense instruction as to simple possession. They maintain that had the lesser included offense instruction been given the jury would have had the option of not convicting defendants as Class X offenders. In that case, defendant was stopped by police officers and his car eventually searched. A loaded revolver was found inside. The arresting officers testified that when defendant exited his car he dropped a package which contained 22 smaller packets totalling 11.2 grams of cocaine. The parties stipulated to the weight of the cocaine, but during trial defense counsel requested that an instruction on the lesser included offense of possession be given. This request was denied. The appellate court, in reversing the case, stated that even if there was evidence of intent to deliver, the controlling issue was whether the evidence could have also supported a verdict on the lesser included offense. (*Crenshaw*, 202 Ill. App. 3d at 435.) The court explained that the presence of the weapon and the division of the cocaine into 22 smaller packets was not conclusive evidence of an intended delivery. The court held that it was improper for the trial court to refuse defendant's request for an instruction to the jury on the lesser included offense of possession.

■■ *Crenshaw* is distinguishable from the instant case. Here, the evidence offered by the State established that the substance weighed more than 15 grams. The amount of cocaine at issue in *Crenshaw* was 11.23 grams. Further, in reversing the trial court, the appellate court in *Crenshaw* reasoned that there was no direct evidence of any sale or delivery of the controlled substance found in defendant's possession. In this case, three officers testified that they observed several instances of individual transactions where individuals approached defendants in the car and an exchange occurred. Further, the defendant's request for the lesser included instruction was denied in *Crenshaw*, but there was never a request made in the instant case.

The test for determining whether a defendant has been denied effective assistance of counsel was established in the United States Supreme Court case *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. There the court established a two-prong test. The first prong is that defendant must prove that trial counsel's representation fell below an objective standard of reasonableness and that counsel's shortcomings were so serious as to deprive the defendant of a fair trial. The second component is that defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Incompetence is not established by erroneous or unsuccessful strategic judgments. *People v. Kubat* (1983), 94 Ill. 2d 437, 447 N.E.2d 247.

We find here that defense counsel's failure to request an instruction on the lesser included offense was a matter of trial strategy and did not amount to ineffectiveness.

Defendants finally argue that the trial court abused its discretion in sentencing them to 16 years in prison. Defendant Taylor maintains that he lacked a history of violent crimes, had never been sentenced to the penitentiary, and was a "B" average student in school. He was also 24 years old at the time of the offense. He specifically contends that the court did not consider his rehabilitative potential. Defendant Wells asserts that he was merely a passenger in Taylor's car, was less culpable than Taylor, and that the amount of drugs involved was small.

In determining an appropriate sentence, the defendant's history, character, rehabilitative potential, the seriousness of the offense, the need to protect society, and the need for deterrence and punishment must be equally weighed. *People v. Coppula* (1991), 212 Ill. App. 3d 52, 55, 570 N.E.2d 879.

■ In this case, the court found that Taylor had pleaded guilty to an earlier offense involving cocaine prior to the current charge. The court also found that defendant Wells while on bond committed an offense and was subsequently charged with the current offense. Based on these factors, the court concluded "So much for rehabilitative potential." The court further considered that given the amount of cocaine found in defendants' car and the amount of money in their possession, they were "sophisticated drug dealers." The court's comments here indicate that the court considered defendants' potential for rehabilitation, but that it determined those chances were not great. Trial courts have wide discretion in sentencing a defendant, and, absent a finding of abuse, reviewing courts must defer to that determination. (*People v. Gannon* (1991), 213 Ill. App. 3d 560, 567, 572 N.E.2d 1133.) We are convinced that the trial court properly considered the relevant factors in aggravation and mitigation in determining defendants' sentences.

For the above reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.