THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GERALD ELLIOT WALKER, a/k/a El Walker, Defendant-Appellee.

First District (3rd Division)   No. 1—92—1900

Opinion filed December 29, 1993.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William

Carroll, and William Toffenetti, Assistant State's Attorneys, of counsel), for the People.

Edwin F. Mandel Legal Clinic, of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Gerald Elliot Walker, was charged with robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—1). Defendant's indictment was ultimately dismissed on the basis that his right to due process was violated when the police destroyed material evidence. The State now appeals. We affirm.

The sole issue before this court is whether the trial court erred when it dismissed defendant's indictment.

Mary Groff testified that on November 14, 1990, at approximately 7 p.m., she entered a Little Caesar's Pizza restaurant located at 355 West North Avenue in Chicago, Illinois. Groff recalled that while she was standing in the restaurant waiting for her order, she was holding her wallet in her right hand and eight $1 bills in her left hand. Groff further testified that while she was waiting for her order, a man whom she later identified as defendant entered the restaurant. She told the court that defendant was loud, that he ordered some food and that he left the restaurant and came back in several times. Groff testified that after defendant entered the restaurant for the last time he turned to her and said: "Give that to me." Groff maintained that defendant then took the wallet from her hand and tried to remove the dollar bills from her other hand. Groff told the court that she struggled with defendant and that she refused to let go of the money. Groff testified that defendant then pushed her into a window, took the money and her wallet and fled the restaurant. Groff recalled that defendant was wearing a brown leather cap, a light-colored jacket and blue jeans at the time. Groff called the police.

Groff testified that about 10 minutes after a police squad car arrived, defendant was brought back to the crime scene in a police wagon. Groff testified that when defendant exited the wagon, he was wearing clothing which was different than the clothes he wore during the robbery and that he had mud on him, but that "his face looked the same." She further testified that the police returned her money, driver's license, credit cards, a check book and some pictures. Groff also testified that after she identified defendant on the street, she identified him again later at a police station when he was wearing a jacket and a hat.

After Groff finished her testimony, the State informed the court and the defense that certain items of evidence which had been inventoried by the police had been destroyed, including a plastic bag,

a jacket, a hat, a knife, a grey suit and a pair of brown leather gloves. Officer Kelly Davis, the policeman who apprehended defendant, signed a form authorizing the destruction of the items. The evidence in question was destroyed approximately six weeks after the arrest and eight months prior to the trial. The defense made a motion for a mistrial or a dismissal. The motion was denied.

In addition, police officer William Kappel testified for the State. Officer Kappel testified that on November 14, 1990, he and his partner, Officer Collier, were in a surveillance van parked at approximately 355 West North Avenue. The police officers were watching an elevated train station (el station) on North Avenue where several robberies had been reported. Officer Kappel testified that they saw defendant exit the el station and then enter a Little Ceasar's pizzeria. Officer Kappel also stated that he saw defendant struggle with a woman, push her into a window and then flee from the restaurant. Officer Kappel testified that he exited the van and went to the restaurant to aid the victim, while Officer Collier started to pursue defendant; however, Officer Collier injured his leg on the door of the van and was unable to pursue him. Officer Kappel testified that he then chased the suspect. Officer Kappel further testified that when the suspect was apprehended, he was not wearing a hat, a jacket, or carrying a white bag.

Defendant testified in his own behalf. Defendant testified that he visited the Cabrini Green housing project on November 14, 1990, at around 4:30 in the afternoon. Defendant recalled that sometime between 6 p.m. and 6:30 p.m. that evening, he left Cabrini Green and walked through the Old Town Garden to Olivet Center. Defendant maintained that he left Olivet Center and began to head for the el station to go home at approximately 6:40 p.m. Defendant testified that he was heading north on Cleveland Avenue and began to turn west on to Blackhawk Street when he noticed that the police were interacting with some men on the street. Defendant then stated that he decided to head east on Blackhawk instead. Defendant testified that as he walked east, he saw a police car proceed towards him. Defendant recalled that a police officer subsequently jumped out of the squad car and said: "Hey you." Defendant testified that he was carrying a bag at this time. Defendant admitted that he was also carrying a knife at that time. Defendant testified that he turned west and began to run from the police officer because he was afraid of being caught with the knife. While running from the police, defendant dropped the bag which he was carrying. Defendant continued to run but stopped just before reaching Larrabee Street, whereupon he was arrested and transported to the Little Ceasar's restaurant on North Avenue in a paddy wagon.

After the close of the evidence, the jury informed the court that it was "deadlocked" and therefore unable to reach a verdict. The trial court declared a mistrial. Defendant subsequently filed a motion to dismiss the information and the indictment on the basis that defendant's right to due process had been violated when the police destroyed material evidence. Defendant's motion was granted. The State now appeals this order.

The State contends that the trial court erred when it dismissed defendant's indictment because there was no showing of bad faith on the part of the police. We disagree.

In *California v. Trombetta* (1984), 467 U.S. 479, 485-90, 81 L. Ed. 2d 413, 419-23, 104 S. Ct. 2528, 2532-34, the United States Supreme Court considered two factors when examining the State's duty to preserve evidence: (1) whether the State acted in good faith and in accordance with its normal practice; and (2) whether the evidence in question might play a significant role in the suspect's defense and was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable available means. Later in *Arizona v. Youngblood* (1988), 488 U.S. 51, 57, 102 L. Ed. 2d 281, 289, 109 S. Ct. 333, 337, the United States Supreme Court limited its holding in *Trombetta*, which required bad faith on the part of the State with respect to the destruction of potentially exculpatory material evidence. The *Youngblood* court concluded that the State's failure to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated defendant," does not constitute reversible error. In addition, this court has considered the existence of reasonable doubt when considering the ramification of the destruction of evidence. *People v. Hall* (1992), 235 Ill. App. 3d 418, 425, 601 N.E.2d 883, 889.

We find that the present case satisfies the *Trombetta* criteria for a violation of a defendant's due process rights due to the destruction of evidence. The State argues that the bag and clothing were destroyed in accordance with police procedure and therefore in good faith; the record shows that the evidence in question was destroyed approximately six weeks after the arrest and eight months prior to the trial. The Chicago police who destroyed the evidence were not acting in accord with normal police procedure pursuant to the Chicago police department General Order number 81—1. General Order number 81—1 provides that the police are no longer authorized to dispose of property when it is no longer needed as evidence. We believe that a reasonably prudent police officer acting in good faith would not assume that material evidence would no longer be

needed six weeks after the arrest. We agree with the trial judge's statement upon the dismissal of this cause that no case comes to trial within six weeks of the arrest. With respect to the second *Trombetta* criterion, we find that the evidence destroyed by the police in the present case played a central role in defendant's defense of misidentification and was of such a character that it could not be obtained through other means.

In addition, this case complies with the *Youngblood* standard that the evidence destroyed cannot be of such a nature that "no more may be said than that it could have been subjected to tests." More may be said of the evidence destroyed in the present case than "it could have been subject to tests." In this respect, the present case is distinguishable from *Youngblood*. In *Youngblood*, the prosecutor did not attempt to make any use of lost evidence. Youngblood was convicted with evidence independent of the evidence which was lost. (See *Arizona v. Youngblood* (1988), 488 U.S. 51, 56, 102 L. Ed. 2d 281, 288, 109 S. Ct. 333, 336.) In the present case, the government has used and must employ testimony regarding the lost evidence in order to convict defendant. See *United States v. Belcher* (W.D. Va. 1991), 762 F. Supp. 666, 672.

Furthermore, the jury's inability to return a verdict after having heard all of the evidence demonstrates a reasonable doubt about the defendant's guilt. The record shows that the trial court recognized that the destroyed evidence could have played a large part in the jury's inability to reach a verdict.

A ruling on a motion to dismiss is entitled to great deference and will be sustained absent a clear abuse of discretion. (*People v. Lendabarker* (1991), 215 Ill. App. 3d 540, 552, 575 N.E.2d 568, 576.) There was no clear abuse of discretion by the trial court in this case. For the aforementioned reasons, we affirm the trial court's declaration of a mistrial and dismissal of this cause.

Affirmed.

TULLY, P.J., and CERDA, J., concur.