THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NICHO-
LAS MADISON, Defendant-Appellant.

First District (1st Division)   No. 1—92—1193

Opinion filed June 27, 1994.

Larry Axelrood, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Defendant Nicholas Madison was convicted by a jury for possession of a controlled substance with intent to deliver. He was sentenced to 10 years in the Illinois Department of Corrections.

The defendant raised the following issues on appeal: (1) whether the trial court erred in denying defendant's motion to quash arrest and suppress evidence because there was not probable cause to detain the defendant or search his vehicle; (2) whether the use of demonstrative evidence where the real physical evidence has been destroyed is reversible error when the alleged offense is possession; and (3) whether the trial court erred in denying the defendant's motion to dismiss based on the destruction of evidence by the State. For the reasons which follow, we reverse and remand.

On August 23, 1988, defendant filed a motion to quash arrest and suppress evidence based upon grounds that his arrest violated his fourth amendment constitutional rights. On May 5, 1989, following a hearing the circuit court denied defendant's motion to quash arrest and suppress evidence.

At the hearing on defendant's motion to quash arrest and suppress evidence, Chicago police officer Robert Coyle testified that he and Officer Daniel Judge were in a marked squad car, on routine patrol, driving down an alley in the 400 block of East 115th Street, on January 15, 1988, at approximately 2 a.m. They were driving at about 10 miles per hour with their headlights on. Defendant was spotted standing 20 feet away from them in a parking lot abutting an apartment building. The defendant was standing in front of a 1975 Chevrolet Monte Carlo with the hood raised. The officers had no

warrant to arrest or search his vehicle. Defendant was observed holding a large clear plastic bag in front of his chest and the bag contained several brown chunks which varied between "golf ball and small baseball size" and it appeared to be heroin. The defendant looked in their direction, quickly "stashed" the bag under the hood, and immediately slammed the hood down. They exited their vehicle and approached the defendant, who did not attempt to flee. Judge walked to the front of the vehicle while Coyle entered the vehicle to release the hood. Judge stated that upon lifting the hood he recovered the plastic bag that he observed the defendant throw inside the hood of the car. After examining the substance and determining based upon their experience as police officers that the substance recovered was Mexican brown heroin, defendant was then taken to the fifth district police station and charged. The recovered property was inventoried and sent to the crime laboratory.

At the hearing on the motion to quash arrest and suppress evidence, Officer Judge testified to substantially the same facts as Coyle. In addition, Judge testified that he recognized the accused as a local narcotics dealer because two of his fellow officers had pointed him out "on the street." The arrest report stated that the defendant was "arrested for possession of controlled substances after the arresting officers observed above subject a known narcotics dealer standing by his auto." The trial court found that the officers conducted no actual search in that the defendant held the heroin in plain view of the officers. The court denied the defendant's motion to quash the arrest and suppress the evidence.

On February 5, 1992, shortly prior to the trial, the defendant filed a motion in limine to preclude the State at trial from referring to the defendant as a known narcotics dealer or known drug dealer, by eliciting from or having any of their witnesses, on direct or cross, testify to this information. This motion was granted.

On that same date, February 5, 1992, defense counsel made a motion to produce evidence and to view and test the evidence with the aid of an expert. On that day the defendant discovered that the alleged heroin no longer existed, having been destroyed on April 4, 1991. This fact was known by the State at least in January 1992, but counsel for defendant had not been notified. The trial court noted that the defense counsel was entitled to inspection of something only if it existed, but the evidence was no longer in existence.

The next day, on February 6, 1992, defendant filed a motion to dismiss on grounds that the State failed to allow inspection of the suspect heroin in violation of discovery rules. In his motion to dismiss, defendant asserted discovery violations for failure to produce the

heroin and two beepers for inspection. All items had been destroyed. The court explained that the defendant had gained a major advantage because the police department destroyed the exhibits. The defense counsel expressed concerns about jeopardy caused by the destruction of the exhibits and the need for the jury to see the size, nature and packaging of the items. In response the court suggested, "One way might be to suggest a sample of sugar and salt or something that would weigh the same size." Defendant's motion to dismiss was denied.

On February 25, 1992, defendant filed a motion *in limine* to bar the State from using the brown sugar exhibit as demonstrative evidence. The court denied defendant's motion reasoning that, "they destroyed their own evidence of their own free will and the jury can interpret the evidence."

At trial, on February 25, 1992, Officers Coyle's and Judge's testimony was substantially the same as at the hearing on the motion to quash arrest and suppress. In addition, Judge testified that he retrieved the suspect heroin from the hood of the car and handed it to Coyle. Judge demonstrated to the jury how the defendant held the suspect heroin chest high, dropped it in the hood and slammed the hood shut as the officers approached. Judge testified that the exhibits were "more chunky" than the suspect heroin and the plastic bags in the exhibits had zippers while the original exhibits did not have zippers.

Coyle testified that the narcotics never left his sight after he received them from Judge. Coyle also demonstrated to the jury how defendant held the bag in front of his chest. Coyle testified that the exhibit was basically that same as what he saw defendant holding on the date in question.

Nicholas McNamara, a forensic chemist in the crime laboratory, testified that on January 19, 1988, he received and inventoried one clear plastic bag containing three separate bags of a brown-like substance. McNamara testified that he weighed each individual package and determined that the total weight of the brown powder in the three bags was 1,501 grams, or 3.3 pounds. He also performed an infrared analysis and found each of the three packages contained heroin. After placing the date and his name on each bag, McNamara repackaged the evidence to appear in the same way he received it. He then sent the sealed bags to the evidence and recovered property section of the Chicago police department (ERPS).

Joseph Shields, commanding officer of ERPS, testified that on January 27, 1988, he received the heroin, inventoried it and placed it in his personal safe that same day. Shields testified that evidence is

automatically disposed of after three years, unless ERPS is notified in writing or by a supervisor to retain it. Shields stated that, on March 6, 1988, ERPS received a tracer signed by the arresting officer, dated March 6, 1988, stating that he wanted this property held. However, the property was destroyed in violation of established procedures. The narcotics were destroyed in a burn down which routinely occurred approximately four to six times a year, depending on the amount of items to be disposed of and the availability of personnel. They are burned because of space limitations. On April 4, 1991, Officer Shields testified that he opened the safe, checked the seals and the seals were intact. He put his number, name, and star number directly on the inventory form, as he was removing the items from the safe. He then hand carried the narcotics out to the incinerator and placed them in the incinerator. The State's response to the defendant's motion was that it should have been timely made and that at trial there would be a laboratory report and testimony about the lost evidence.

Chicago police officer Truman Royster testified that in 1988 he worked undercover for the street narcotic impact program. He testified that at that time 1,500 grams of heroin were worth $120,000, an amount unlikely to be for someone's personal use. Royster explained that such a quantity would normally be possessed by a distributor, supplier or dealer of narcotics. The officer also stated that he had previously recovered beepers from those arrested for selling heroin. The jury convicted defendant of possession of a controlled substance with intent to deliver.

The first issue is whether the trial court erred in denying defendant's motion to quash arrest and suppress evidence based upon a lack of probable cause. Warrantless arrests, such as the one in the instant case, cannot be sustained without the existence of reasonable grounds for a police officer to believe that the person has or is committing a crime. (See *People v. Holveck* (1990), 141 Ill. 2d 84, 565 N.E.2d 919.) Reasonable grounds is synonymous with probable cause. (*People v. Holveck*, 141 Ill. 2d at 95; *People v. Jones* (1990), 196 Ill. App. 3d 937, 554 N.E.2d 516.) To determine whether there is probable cause to arrest, officers need not possess evidence sufficient to convict, but must only have knowledge of facts which would lead a reasonable man to believe that a crime has been committed and that it was committed by defendant. *People v. Neal* (1985), 111 Ill. 2d 180, 193, 489 N.E.2d 845, 849-50.

Madison contends that he was arrested without a warrant under circumstances that strongly suggested that the police were simply checking him and his car on a random basis because they believed

him to be a drug dealer. Madison further contends that it was not credible that he would be standing around holding a large bag of contraband in view of the police.

Coyle testified that they were about 20 feet away when they first observed defendant standing at the front of a 1975 Chevrolet Monte Carlo with a raised hood, at approximately 2:15 a.m. Coyle testified that he was able to see because the area was lighted by artificial lights and the headlights of their squad car were pointed directly toward defendant. Coyle testified that he noticed defendant holding a clear plastic "gallon bag" close to his body. Coyle stated that the bag was approximately one foot square and contained several large brown chunks, which varied between "golf ball" to "small baseball" size.

Coyle's testimony was corroborated by Judge. Both testified that based upon their experience as police officers, they suspected the brown chunks were heroin. Coyle and Judge testified that when defendant looked in their direction he stashed the bag under the hood and immediately shut the hood. At that point the officers exited their vehicle and approached the defendant. Judge walked to the front of the car while Coyle entered the vehicle in order to release the hood. Judge stated that after lifting the hood, he observed the plastic bag that defendant had thrown inside. Defendant was arrested and taken to the fifth district police station.

The plain view doctrine allows a police officer to seize an item when (1) the officer is lawfully located in the place where he observed the object, (2) the object is in plain view, and (3) the item's incriminating nature is "immediately apparent." (*People v. Chavez* (1992), 228 Ill. App. 3d 54, 69, 592 N.E.2d 69, citing *Horton v. California* (1990), 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301; see also *United States v. Richards* (7th Cir. 1991), 937 F.2d 1287.) In *Richards*, the living room end table, the bedroom bureau, and the kitchen table all contained plates out in the open with a white powdery substance next to razor blades. The court in *Richards* held the warrantless seizure was justified because the cocaine was clearly in plain view, its incriminating character was immediately apparent and the officer had a lawful right of access to the object itself.

■ In the instant case, as in *Richards*, the plain view doctrine is applicable; thus, the warrantless seizure was justified. The heroin in the clear plastic bag was in plain view when the defendant held it up in front of him. The police officers testified that they suspected the brown chunks in the plastic bag were heroin. The incriminating nature of these objects was immediately apparent to these experienced police officers, and the trial court, as the trier of the facts on the motion, believed the testimony of the police officers over that of

the defendant. The circuit court made a factual finding that there was no actual search and the heroin was in plain view. Defendant disagrees and contends that a search took place when the officers opened the hood of the car. Assuming *arguendo* that the opening of the hood of the car constitutes a search, the result remains the same. The officers initially observed what they believed to be heroin, a controlled substance, in his possession, which is a violation of the law. This gave the officers probable cause to enter the hood of the car and retrieve the contraband which they observed being placed there in plain view. *People v. Bradford* (1989), 187 Ill. App. 3d 903, 543 N.E.2d 918.

The second issue is whether the use of demonstrative evidence where the real physical evidence has been destroyed is reversible error when the alleged offense is possession. It is within the sound discretion of the trial court to admit demonstrative evidence, and its determination of admissibility of such evidence shall not be disturbed by a reviewing court absent a clear abuse of that discretion. (*Elder v. Finney* (1993), 256 Ill. App. 3d 424, 427, 628 N.E.2d 393, 394, citing *Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 476 N.E.2d 1232.) If it appears that demonstrative evidence was used for dramatic effect, or emotional appeal, rather than factual explanation useful to the reasoning of the jury, such use should be regarded as reversible error. *Finney*, 256 Ill. App. 3d at 427-28, 628 N.E.2d at 395, citing *Smith v. Ohio Oil Co.* (1956), 10 Ill. App. 2d 67, 134 N.E.2d 526.

In *People v. Everette* (1989), 187 Ill. App. 3d 1063, 543 N.E.2d 1040, the defendant asserted that he was not proved guilty beyond a reasonable doubt because the State improperly introduced into evidence a gun which was similar to the one used by defendant. The gun actually used in the incident had been inadvertently destroyed by the State. The defendant had admitted firing the gun that caused the death, and his defense was based on a theory of self-defense. The court concluded that in view of the limited use of the similar gun, it could not say that the trial court abused its discretion in admitting it into evidence, reasoning that the gun was used briefly during the testimony of a police officer and by the prosecutor in closing argument but was not permitted to go to the jury.

In *Bugno v. Mt. Sinai Hospital Medical Center* (1990), 201 Ill. App. 3d 245, 559 N.E.2d 1, plaintiff utilized hand drawings depicting the condition of his leg in a cast. The defendant argued that the exhibits were "subjective, argumentative, plaintiff-slanted, and misleading." The drawings were edited until they fully complied with the witnesses' descriptions. The witnesses verified that group exhibit No. 1 accurately depicted their personal observations at the time of

their observation. The defendant, Mt. Sinai Hospital never challenged the witnesses' testimony on cross-examination, nor did it present any evidence to rebut the accuracy of the drawings. The court concluded that the drawings were necessary to aid the jury in its understanding of the advanced testimony.

In *People v. Sanchez* (1986), 115 Ill. 2d 238, 268, 503 N.E.2d 277, the Illinois Supreme Court distinguished *French v. City of Springfield* (1976), 65 Ill. 2d 74, 357 N.E.2d 438, and *People v. Crowe* (1945), 390 Ill. 294, 61 N.E.2d 348, as not on point. In *French* and *Crowe* the demonstrative evidence admitted was held to be in error in each instance. The demonstrative film in *French* was a recreation of events and the demonstrative photographs in *Crowe* were of an after-the-fact poised nature, and neither of these exhibits even purported to depict any physical facts as they actually existed at the time of the occurrence in question. In contrast, the *Sanchez* court concluded that the demonstrative photographs in that case were of actual items of physical evidence obtained from the crime scene. While it is true that the fibers in the photographs had been magnified and presented to facilitate comparison, there is no suggestion that they were misleadingly altered in any way, thereby they were properly considered for their significance.

■ In the instant case, on direct examination, Officer Coyle was shown an exhibit consisting of a large clear plastic bag which contained three small bags of light brown sugar. Coyle testified that the exhibit reasonably depicted and was basically the same as what he saw defendant holding. Both Coyle and Judge demonstrated to the jury how defendant held the bag in front of his chest. Officer Judge testified that the bags used in the exhibits were approximately the same size as those originally recovered from defendant, except the contraband was "more chunky" than the brown sugar. However, the chemist who testified as to his testing of the contents of the bag recovered from defendant stated that the light brown sugar in no way resembled the dark brown chunks of alleged heroin which he had tested.

Since Judge testified that the contraband was chunkier than the brown sugar and the chemist testified that the light brown sugar in no way resembled the dark brown chunks of alleged heroin, we can conclude that the demonstrative evidence did not accurately depict the destroyed evidence, unlike the evidence in *Sanchez*, which was actual photographs of physical evidence obtained from the crime scene. Unlike *Bungo*, where the demonstrative hand drawings depicted the condition of plaintiff's leg in a cast at the time of the witnesses' observations, the demonstrative evidence, in the instant

case, did not fully comply with the witnesses' description. Additionally, unlike *Everette* (187 Ill. App. 3d 1063, 543 N.E.2d 1040), where the similar gun was used briefly as demonstrative evidence, in the instant case, the demonstrative evidence was used extensively. Coyle demonstrated how Madison held the evidence in front of his chest. Furthermore, unlike the evidence in *Everette*, the evidence in this case is not overwhelming. In fact, the significant evidence here is the controlled substance itself.

In reviewing a jury's verdict, a court of review need not determine that the record is free from error; rather, the court need only determine whether any error occurred which operated to the prejudice of a party or which unduly affected the outcome. (*Elder v. Finney*, 256 Ill. App. 2d at 428, citing *Brown v. Arco Petroleum Products Co.* (1989), 195 Ill. App. 3d 563, 565, 552 N.E.2d 1003.) In view of the extensive use of the demonstrative evidence which did not accurately depict the real evidence against the defendant, we must conclude that this operated to prejudice the defendant and unduly affected the outcome.

The last issue is whether the trial court erred in denying the defendant's motion to dismiss or in the alternative to suppress testimony based on the destruction of evidence by the State. Being a possession offense, the instant case hinges exclusively on proof that defendant possessed or controlled heroin that the officers allegedly recovered. (*People v. Delgado* (1993), 256 Ill. App. 3d 119, 628 N.E.2d 727.) The amount of controlled substance alone enhances the severity of the offense, elevating it to a delivery charge without any additional proof of intent. (*People v. Delgado*, 256 Ill. App. 3d 119; *People v. Green* (1993), 256 Ill. App. 3d 496, 501, 628 N.E.2d 586, 589.) Thus, the availability of the evidence for testing by defendant's experts was of critical importance. Defendant never waived his right to inspect the evidence. Counsel for defendant notified the State well before the trial that defendant would not stipulate to the chain of custody or the chemical test results.

In *People v. Taylor* (1977), 54 Ill. App. 3d 454, 369 N.E.2d 573, the defendant sold two small tinfoil packets of a brown powder to undercover agents of the Illinois Bureau of Investigation for $50. The powder weighed 0.5 grams (less than one-fiftieth of an ounce). After the qualitative test, from which the chemist concluded that heroin was present in the brown powder, about half of the powder remained. Virtually all of the other half was consumed by the quantitative test, which revealed, according to the chemist, that some 2.6% of the powder was heroin. The small amount of residue that remained was washed down the drain by the State's chemist, upon completion of

the test. The court held that the defendant was denied due process of law and the opportunity for meaningful confrontation of the witnesses against him by the State's unnecessary destruction of the allegedly prohibited substance which he allegedly delivered to agents of the State, and that his conviction must be reversed. (*People v. Taylor*, 54 Ill. App. 3d at 457.) The court further held:

"This holding should not be read as stating that in every instance in which an agency of the State destroys all of a controlled substance in the process of testing, the conviction of the defendant cannot stand. (*Cf. State v. Jones*, 18 Ore. App. 343, 525 P.2d 194 (1974).) But whenever an accused seeks by timely motion a sample of the allegedly controlled substance, so that it can be subjected to independent testing under appropriate safeguards as may be deemed necessary by the trial court (see *State v. Cloutier*, 302 A.2d 84 (Me. 1973)), a heavy burden devolves upon the State either to produce a testable sample or to prove by clear and convincing evidence that the destruction of all of the substance in its possession was necessary. If it can do neither, then it should not, as a matter of fundamental fairness, be permitted to introduce into evidence the results of its tests. As the destruction here was clearly unnecessary, the State's expert testimony should not have been admitted, and defendant's conviction must be reversed ***." 54 Ill. App. 3d at 457-58.

In *Taylor* the court emphasized that it was mindful that expert opinions as to the accuracy and conclusiveness of tests performed upon chemical substances can and do differ, and that one of the primary strategies available to defense counsel in a drug case is to raise a reasonable doubt as to the identity of the substance involved. (*People v. Taylor*, 54 Ill. App. 3d at 456.) The court did not require the defendant to prove actual prejudice arising from the destructive testing because, in the absence of an independent test, the accused will usually not know whether the results of the State's test were inaccurate or incorrect. (*People v. Dodsworth* (1978), 60 Ill. App. 3d 207, 210, 376 N.E.2d 449.) In *Dodsworth*, the court agreed with *Taylor* that because the substance has been destroyed by State's testing, a "heavy burden" rests upon the State to show that the destructive testing was necessary. The court extended the *Taylor* court's reasoning that if the destructive testing may be excused on any grounds, such as accident, other inadvertence or even negligence, a similar burden is placed upon the State to show that this was the reason for the destruction.

In *People v. Ebener* (1987), 161 Ill. App. 3d 232, 514 N.E.2d 205, the court concluded that the holdings in *Taylor* and *Dodsworth* demand that the State take precautions to protect the rights of

defendants to make an independent analysis of substances seized from them, especially when a protective order has been entered prior to the completion of all the laboratory testing.

In *People v. Lopez* (1982), 107 Ill. App. 3d 792, 795, 438 N.E.2d 504, the court found *Taylor* (54 Ill. App. 3d 454, 369 N.E.2d 573) not applicable because the motion for testing in *Taylor* was promptly made. In *Lopez* no motion to obtain an independent chemical analysis of the substance was made other than a verbal request to view the physical evidence at the moment of the trial. In *Lopez*, at trial, the State offered and the court received, over specific objection by defendant, photocopies of two evidence bags or envelopes and three pages from the log book of the crime laboratory. There defendant was convicted of delivery of less than 300 grams of phencyclidine (PCP) and was sentenced to three years. The evidence of guilt was truly overwhelming and virtually unassailed. The court concluded that the inadvertent destruction of the physical evidence did not in any manner prejudice the defendant.

An undercover officer testified that he told Lopez that he wished to buy four ounces of PCP. Defendant said he did not have the substance but could have it by midnight. Lopez admitted to the officer that he had "been dealing a long time and he didn't want to screw up." The officer asked defendant if he had a sample of PCP and he gave the officer a plastic bag containing a white powder substance and asked for $60. The officer gave defendant $60. The officer field tested the powder and the test indicated possible or presumptive presence of PCP. The officer then emptied the contents into a new plastic bag, which he and another officer initialed. He then added the original bag and sealed the new bag with staples and tape. He then put the new bag into a manilla envelope, locked and sealed it. The officer put an endorsement on the envelope which stated the contents and the place and time of receipt. That night the officer made photocopies of the outside of the plastic envelope and the manilla envelope. At the opening of trial, defense counsel suggested to the trial court that he wished to "view the physical evidence." No motion other than the verbal request was made to view the evidence. The State reported to the court in response to this request that the substance in question had been accidentally destroyed and the State learned of this destruction two weeks before commencement of trial. Prior to trial no motion of any kind was made by defendant for production or testing of the drug sample. Field testing and chemical testing by the police department had been completed. The court concluded that this inadvertent destruction did not in any manner prejudice the defendant and the chemist identified photocopies of

three pages of the laboratory log book which reflected receipt of the evidence as true and accurate. The evidence of guilt was truly overwhelming and virtually unassailed.

In *People v. Young* (1991), 220 Ill. App. 3d 488, 495, 581 N.E.2d 241, defendant failed to file a timely motion to test the substance or preserve it. Pursuant to a search warrant of a single family residence, the police recovered from the basement a brown paper bag containing three plastic bags and 58 white paper packets, which the State claimed was cocaine, and two small handguns. Defendant Derrick Young was convicted of intent to deliver not less than 10 and not more than 30 grams of a controlled substance. Officer Wozniak stated that when confronted with the contraband, defendant admitted to him that all of the items belonged to defendant and that no one else on the premises was involved.

Defendant Young stipulated to the testimony of Chicago police chemist Moka that she analyzed the contents of the brown paper bag by chemically examining the contents of one of the three plastic bags and 1 of the 58 paper packets. In Moka's expert opinion, an amount of 1.86 grams tested positive for the presence of cocaine and the weight of the entire amount of the substance received by her was 16.87 grams. It was also stipulated that the entire amount of the substance confiscated from the defendant's house had been incinerated by the police on April 27, 1987, pursuant to a Chicago police department procedure to "[d]ispose of (the substances) according to law." (*Young*, 220 Ill. App. 3d at 492.) Defendant appealed his conviction, contending that the suspect controlled substances which formed the basis of the July 1, 1987, indictment were destroyed by the police on April 21, 1987, and that prior to the destruction, only a portion thereof, 1.86 grams, was ever tested positive for the presence of cocaine. Defendant further asserted ineffective assistance of counsel.

The appellate court in *Young* concluded that defendant's argument that defense counsel should have moved to dismiss rather than stipulate to the chemist's test results was without merit where: (1) defense counsel had filed neither a motion *in limine* to preserve the evidence nor to test the substance; (2) the latter filed motion to inspect the physical evidence was withdrawn; and (3) in particular, the record shows the existence of competent testimony and circumstantial evidence, other than the physical presence of the suspect controlled substance, in and of itself, to sustain the indictment.

In *Young* the appellate court held that the evidence destroyed by the police possessed exculpatory value that was readily apparent, but the significant evidence was not the controlled substance itself. The

appellate court found that under the circumstances, defendant was not proved guilty beyond a reasonable doubt of possession with intent to deliver more than 10 but not more than 30 grams of cocaine, but was proved guilty only of possession with intent to deliver less than 10 grams of cocaine. The *Young* court found that while testing could have proved beyond a reasonable doubt whether the powder in the untested two plastic bags or 57 paper packets contained cocaine, it was uncontroverted that the confirmatory analysis was performed on only 1.86 grams of the powder although the total weight of the powder was listed as 16.87 grams.

Similarly, in *People v. Taylor* (1992), 236 Ill. App. 3d 223, 603 N.E.2d 611, as in *Young,* defendants stipulated to the chain of custody of the cocaine. Defendants were convicted of possession of 16.53 grams of controlled substance with intent to deliver. At the time of trial, Officer Lockridge learned that the cocaine had been destroyed because of the length of time it took for the case to reach trial. This was not the normal procedure for the police department. The substance had been destroyed after the completion of testing. Defendants contended that destruction of the substance after testing eliminated their ability to dispute the test results by evidence of equal integrity and persuasiveness. The appellate court held that having stipulated to the chain of custody, and having failed to challenge the weight of the substance until the eve of trial, it could not say the court erred in denying defendants' motion *in limine* to prohibit testimony regarding the results performed on the substance. The court reasoned that although the evidence was destroyed, the State offered the testimony of Officer Martinez, who testified that the substance weighed 16 grams. He testified that the substance was inventoried, sealed and taken to the crime lab for analysis. Martinez also testified that he conducted a search of the car and observed a cellular telephone on the front seat. His testimony was corroborated by that of Officers Flagg and Lockridge. Jose Mantilla, a forensic chemist, testified that the substance tested positive for cocaine and weighed 16.53 grams. Furthermore, defense counsel stipulated to the chain of custody of the substance and never made an attempt to challenge the weight of the substance until the eve of the trial.

*Young* and *Taylor* (236 Ill. App. 3d 223, 603 N.E.2d 611) are distinguishable from the instant case. Unlike the defendant in *Young* and *Taylor,* the defendant in this case did not stipulate to the chain of custody or the weight of the substance. And unlike the defendant in *Young,* Madison filed a timely motion to preserve the evidence for independent testing of the substance.

Additionally, in *Young, Lopez* and *Taylor* (236 Ill. App. 3d 223,

603 N.E.2d 611), unlike the instant case, the evidence is not closely balanced. In the instant case, the destroyed evidence is the essence of the State's evidence against Madison. The court in *Young* concluded that "the significant evidence here was not the controlled substance itself." (*Young*, 236 Ill. App. 3d at 496.) The court in *Lopez* concluded that the evidence was overwhelming. Similarly, the court in *Taylor* (236 Ill. App. 3d 223, 603 N.E.2d 611), reasoned that although the evidence was destroyed, the State offered testimony from the three officers who had defendant under surveillance for 45 minutes while three drug transactions were conducted. Those three officers were able to testify to the chain of custody and the weight of the substance.

Furthermore, in the instant case, while defendant's motion for independent testing of the substance was not filed until February 5, 1992, the State's contention that it was not timely filed is without merit. Although the State knew at least since January 1992 that the evidence had been destroyed on April 4, 1991, the State did not disclose the destruction of the evidence until after defendant filed the motion for independent testing.

The court acknowledged that there was a wait of three or four years for pending criminal cases at the trial level. The evidence was destroyed more than one year before the instant case was set for trial. Thus, a reasonably prudent police officer acting in good faith would not assume that material evidence would no longer be needed three years and four to five months after the arrest when there is a three- to four-year backlog of pending cases. (*People v. Walker* (1993), 257 Ill. App. 3d 332, 335-36, 628 N.E.2d 971, 973, *appeal denied* (1994), 155 Ill. 2d 575.) In fact, in the instant case, the trial was held more than four years following the arrest.

■ The State asserts that defendant did not file a timely motion for independent testing of the substance. We find from the record, as previously stated, that Madison requested the right to independently test the substance on February 5, 1992, shortly prior to trial. The trial was held on February 25, 1992. In the instant case, we believe that a grave injustice would occur if we accept the State's waiver argument. Whether or not the right to independently test the substance was requested in a timely manner, a court of review will grant relief if the trial error was so prejudicial that real justice has been denied or the verdict of the jury may have resulted from the admission of the demonstrative evidence. (*People v. Dunsworth* (1992), 233 Ill. App. 3d 258, 269, 599 N.E.2d 29, citing *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) We find from the record that it is apparent that the cumulative effect of the denial of the defendant's right to test and the use of the demonstrative evidence denied defendant his constitutional right to a fair and impartial trial.

A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed. (*California v. Trombetta* (1984), 467 U.S. 479, 485, 81 L. Ed. 2d 413, 420, 104 S. Ct. 2528, 2532, citing *Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196.) Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt. (*California v. Trombetta*, 467 U.S. at 485, 81 L. Ed. 2d at 420, 104 S. Ct. at 2532, citing *United States v. Agurs* (1976), 427 U.S. 97, 112, 49 L. Ed. 2d 342, 354, 96 S. Ct. 2392, 2401; *In re C.J.* (1994), 257 Ill. App. 3d 900, 629 N.E.2d 579.) That right is not absolute. *People v. Taylor*, 236 Ill. App. 3d at 227.

In *Arizona v. Youngblood* (1988), 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333, the Court ruled that the due process clause of the fourteenth amendment had not been violated by the failure of the police to refrigerate the clothing and to perform tests on the semen samples. The Court concluded that the situation in *Youngblood* is no different than a prosecution for drunken driving that rests on police observation alone; the defendant is free to argue to the finder of fact that a breathalyzer test might have been exculpatory, but the police do not have a constitutional duty to perform any particular test. (*Youngblood*, 488 U.S. at 59, 102 L. Ed. 2d at 290, 109 S. Ct. at 338.) In *Trombetta* the Court held that destroying the breath samples was not a violation of due process and the evidence to be presented at trial was not the breath itself but rather the Intoxilyzer results obtained from the breath samples. Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspects' defense. 488 U.S. at 60, 102 L. Ed. 2d at 291, 109 S. Ct. at 338 (Stevens, J., concurring).

Supreme Court Rule 412, *inter alia*, provides:

"(c) Except as is otherwise provided in these rules as to protective orders, the State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor.

\* \* \*

(e) The State may perform these obligations in any manner mutually agreeable to itself and defense counsel or by:

(i) notifying defense counsel that material and information, described in general terms, may be inspected, obtained, tested, copied, or photographed, during specified reasonable times; and

(ii) making available to defense counsel at the time specified such material and information, and suitable facilities or other arrangements for inspection, testing, copying and photographing of such material and information.

(f) The State should ensure that a flow of information is maintained between the various investigative personnel and its office sufficient to place within its possession or control all material and information relevant to the accused and the offense charged." 134 Ill. 2d R. 412.

Generally, a new trial should be granted only if the defendant is prejudiced by the discovery violation and the trial court failed to eliminate the prejudice. (*People v. Hall* (1992), 235 Ill. App. 3d 418, 601 N.E.2d 883.) In *Hall*, where tape recordings of a witness' interviews with the police officer had been lost, the appellate court concluded that the circuit court had clearly taken steps to eliminate the prejudice. Defense counsel had the benefit of the five-page report prepared by the police officer contemporaneously with the interviews of which the recordings were the subject matter, and which were not likely to differ greatly from the recordings since the officer could not have known that the tape would not be available to exploit any inconsistencies in his report. The appellate court held that the circuit court did not err in admitting testimony of the witness even though tape recordings of the witness' interview with the police officer had been lost. The appellate court reasoned that even without the testimony of the witness which was the subject matter of the taped interview, the evidence in *Hall* was not closely balanced, since one witness gave protracted testimony regarding specific acts that defendant repeatedly performed and another witness gave corroborating testimony describing defendant's *modus operandi*. The defendant was convicted of aggravated criminal sexual abuse of a foster child who resided in his home.

Unlike *Hall*, in light of the chemist's testimony that he could not say whether the substance he tested contained 1% heroin or 99% heroin, the defendant was obviously prejudiced by the unavailability of the evidence, since the quantity of the controlled substance alone enhances the severity of the offense. Additionally, the evidence was not destroyed in the testing process, as in *People v. Taylor* (54 Ill. App. 3d 454, 369 N.E.2d 573), but its subsequent destruction rendered it just as unavailable for the defense to inspect or test to exploit any inconsistencies in the reports. Also, the State failed to disclose this information until trial, notwithstanding that defendant was maintaining his innocence and contesting the laboratory reports and chain of custody.

■ The destruction of the physical evidence in this case must be charged against the State. Lieutenant Joseph Shields, commanding officer of ERPS, testified that evidence is automatically disposed of after three years from the date that the officer actually inventoried the item, unless ERPS is notified in writing or by a supervisor. Although Shields further testified that his department did not make a mistake in burning the evidence, he acknowledged that on March 6, 1988, his office received a tracer signed by the arresting officer, dated March 6, 1988, stating that he wanted this property held. The property was inventoried on January 15, 1988. However, the property was destroyed, in April 1991, in violation of established procedures. Later, Shields admitted, "Technically a mistake was made here, and the item was burned prior to trial." Shields admitted that his job was to protect the integrity, the chain of custody, and control of property for the purposes of trial. The other officers acknowledged that an error in procedures had been made because it was not the department's policy to destroy evidence that was needed for pending cases. Clearly, the control of the property for trial was not protected.

While we hold defendant's conviction must be reversed we do not believe that outright reversal is mandated, because the presence of narcotics may be proved by circumstantial evidence. (*People v. Taylor*, 54 Ill. App. 3d at 458.) In view of our decision to suppress the evidence because of destruction and to bar use of demonstrative evidence, as in *Taylor*, the State may still prove the presence of heroin by other evidence if any exists.

Accordingly, for the foregoing reasons, the decision of the circuit court in denying defendant's motion to suppress evidence based upon a violation of the fourth amendment is affirmed, and the decision of the circuit court denying defendant's motion to dismiss or to suppress evidence because of destruction of the evidence and to bar use of demonstrative evidence is reversed.

Reversed and remanded.

CAMPBELL and O'CONNOR, JJ., concur.