622 So.2d 1348 (1993)
FEDERAL Insurance COMPANY, Appellant,
v.
ALLISTER MANUFACTURING COMPANY, a foreign corporation doing business in the State of Florida, Appellee.
No. 92-2538.
District Court of Appeal of Florida, Fourth District.
August 11, 1993.
*1349 Shirley Jean McEachern of Sellars, Supran, Cole, Marion & Espy, P.A., West Palm Beach, for appellant.
Bradford A. Thomas of Kimbrell & Hamann, P.A., Miami, for appellee.
KLEIN, Judge.
Plaintiff, after paying its insured's claim for fire damage to his residence, brought this action against the manufacturer of the electric garage door opener system, alleging that it was defective and caused the fire. Plaintiff's expert discarded a part of the product alleged to be defective, resulting in the granting of a motion in limine which left plaintiff without the means to prove its case. The court then granted defendant's motion for a summary judgment. We reverse.
Immediately after this home was destroyed by fire a Palm Beach County fire investigator investigated the fire and removed the part of the garage door opener containing the motor, suspecting it to be a possible cause. The plaintiff insurer retained Peter Vallas Associates, Inc., an independent firm which investigates fires for insurers. Their employee, Richard M. Schwartz, investigated the fire scene soon after the fire. He removed evidence from the scene for analysis, and obtained the garage door opener from the county fire investigator. The garage door opener contained only a stub of the power cord. The remainder of the power cord was never found.
Schwartz rendered a report indicating that in his opinion the fire was caused by the power cord, at a point beyond where the stub of the cord came out from the opener. It was his opinion that the garage door opener, which he examined, was not the cause of the fire. The heat damage to that opener was, however, a fact, along with other evidence, which supported his conclusion that the fire started somewhere in the portion of the power cord which was never found. Neither the county fire investigator nor Schwartz found the cord at the scene.
When, during the litigation, the manufacturer requested production of evidence in possession of plaintiff or its expert, it was discovered that an employee of Peter Vallas Associates had mistakenly discarded the garage door opener. There was no evidence that the loss of the opener was other than inadvertent.
Plaintiff's expert had no opinion as to whether the power cord was defective when it was shipped from the manufacturer. It had been installed four years prior *1350 to the fire. The expert testified that the cord had to have been nicked, cut or broken in some manner, in order to cause the fire, but conceded that it could have happened while the unit was being installed or while it was in use.
This homeowner had only owned this four-year-old home for several months. About one week before the fire, he had a problem with the garage door opener. The door would not close all the way, and the motor continued to operate. When he investigated he discovered the chain was coming off the sprocket. He centered the chain on the sprocket, ran it several times thereafter, and it appeared to operate properly. It was initially speculated that perhaps this occurred on the night of the fire, and, when the motor kept running, it overheated, causing the fire. The experts who were going to testify at trial did not believe that was how the fire started.
The manufacturer's expert was of the opinion that the fire started in one of the branch electrical circuits, which were located in the attic above the garage. He could not specifically explain how this caused the fire, but concluded that it did because there could be no other possible cause. His opinion that the garage door opener did not cause the fire was based on the fact that the homeowner had left the garage door down when he left the house for dinner, and when the fire was discovered by a witness about 15 minutes later, the garage door was up. In his opinion the fire started somewhere else and damaged the control cable for the garage door opener, causing it to short and make the garage door go up.
After conducting several hearings relating to production and the loss of the unit, the trial court granted the manufacturer's motion in limine and held that the trial would be conducted without any evidence regarding the garage door opening system, which included the power cord which had never been found. The court also held that the inference that there is a manufacturing defect where a product malfunctions and is destroyed as a result of the malfunction would not be available to plaintiff. Cassisi v. Maytag Company, 396 So.2d 1140 (Fla. 1st DCA 1981). The plaintiff then conceded that it could not prove its case, and the court granted the manufacturer's motion for summary judgment.
Cases in which evidence cannot be produced because of inadvertent loss or intentional destruction involve the application of Florida Rule of Civil Procedure 1.380, because they are, essentially, discovery violations. Public Health Trust of Dade County v. Valcin, 507 So.2d 596 (Fla. 1987). Our standard of review, therefore, is whether the trial court abused its discretion. Mercer v. Raine, 443 So.2d 944 (Fla. 1983).
Plaintiff argues that because it did not wilfully destroy evidence, the court should not have imposed the "ultimate sanction of dismissal" citing New Hampshire Insurance Company v. Royal Insurance Company, 559 So.2d 102, 103 (Fla. 4th DCA 1990). In that case an insurer responded to a request to produce its underwriting file by stating that it had been destroyed. In reviewing an order striking the pleadings of that party, this court stated on Page 103:
If appellant has destroyed relevant and material information by destroying the file, and that information is so essential to the appellee's defense that it cannot proceed without it, then the striking of appellant's pleadings may be warranted. See Depuy, Inc. v. Eckes, 427 So.2d 306 (Fla. 3d DCA 1983). Alternatively, where a party fails to produce evidence within his control, an adverse inference may be drawn that the withheld evidence would be unfavorable to the party failing to produce it. Valcin v. Public Health Trust of Dade County, 473 So.2d 1297 (Fla. 3d DCA 1984), modified, Public Health Trust of Dade County v. Valcin, 507 So.2d 596 (Fla. 1987).
This court reversed an order striking pleadings, concluding that dismissal is only appropriate where there is a "deliberate and willful failure to submit to discovery." Although the sanction imposed here was that plaintiff would be precluded from presenting evidence regarding the garage door *1351 opening system, that ruling amounted to the equivalent of dismissal, since it left plaintiff without a means to present its case.
The facts involving the lost evidence in this case are unusual in that the expert who examined and then lost the garage door opener concluded there was nothing defective about it. He concluded that the fire originated in the portion of the power cord which he did not examine because it was never found after the fire. Plaintiff thus argues that the manufacturer has not been prejudiced by the loss of the garage door opener. The manufacturer counters that the lost garage door opener, with the stub of power cord still intact, might shed light on whether or how the fire may have originated in the remainder of the cord. The manufacturer also points out that the expert who lost the garage door opener based his opinion as to where the fire originated partially on the condition of the garage door opener which had been exposed to extreme heat.
Plaintiff argues that the court's exclusion of any testimony relating to the garage door opener or the power cord went too far, because if everything pertaining to the garage door opener and cord had been destroyed in the fire, plaintiff would still have been able to get its case to a jury under Cassisi v. Maytag Company, 396 So.2d 1140 (Fla. 1st DCA 1981). In that case a fire started in a clothes dryer, which was destroyed in the fire, and the court held that an inference of manufacturing defect may be available to the plaintiff where the product malfunctions during normal operation and is destroyed as a result of the malfunction.
It is not clear to us whether plaintiff was relying solely on the Cassisi inference to get this case to a jury, and since we do not know what the evidence would have revealed if this case had gone to trial, we do not now decide whether the Cassisi inference would be available to plaintiff on these facts. If the fire had started in the unit containing the motor, rather than in the power cord as a result of a short, as plaintiff claims, it would be difficult to distinguish Cassisi. The fact that it is the power cord which is claimed to be defective, however, raises questions about the applicability of Cassisi, since the cord could have been abused by the installer, prior homeowners or workers making repairs, or chewed by a rat. Shifting the burden of producing evidence to the manufacturer of an electrical appliance, when the cord shorts and causes a fire four years after the sale, may be a step which the Cassisi court would not have taken.
The manufacturer, acknowledging that there are no Florida cases approving dismissal under similar facts, relies on cases from other jurisdictions. We find federal cases particularly persuasive because the sanctions to be imposed for lost or destroyed evidence are based on analogous federal procedure, not substantive state law. Headley v. Chrysler Motor Corp., 141 F.R.D. 362 (D.Mass. 1991). They do not support dismissal.
In Headley the plaintiff's insurer destroyed his automobile after an accident, even though plaintiff had notified the insurer not to destroy the vehicle because he was making a claim of defect against the manufacturer. The manufacturer sought dismissal as the sanction; however, the court concluded that except perhaps where there has been a malicious destruction of relevant evidence, the ultimate sanction should be avoided if possible. The court adopted factors set forth in an earlier loss of evidence case, Lewis v. Darce Towing Company, Inc., 94 F.R.D. 262 (W.D.La. 1982), which are: (1) whether there is prejudice; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) the good faith or bad faith surrounding the loss of evidence; and (5) possible abuse if the evidence is not excluded. In Lewis the court excluded the evidence because it was "unable to ensure that the defendant will not suffer some prejudice if the evidence is admitted." 94 F.R.D. 262, 269.
In Cincinnati Insurance Company v. Synergy, 585 So.2d 822 (Ala. 1991), a fire insurer paid a claim and sued the gas company for defective installation of the gas *1352 system. Although some components of the gas system had been removed and destroyed, while the homeowners were rebuilding, the court concluded that plaintiff should still be allowed to proceed on the theory that the gas regulator, which was available, had a defect which caused the fire. The court emphasized that the solution which it fashioned would afford the litigants a trial on the merits, a policy with which we of course agree. Tubero v. Chapnich, 552 So.2d 932 (Fla. 4th DCA 1989), approved, Commonwealth Federal Sav. and Loan Ass'n v. Tubero, 569 So.2d 1271 (Fla. 1990).
In Public Health Trust of Dade County v. Valcin, 507 So.2d 596 (Fla. 1987), modifying Valcin v. Public Health Trust of Dade County, 473 So.2d 1297 (Fla. 3d DCA 1984), the plaintiff was hindered in her medical malpractice action against a hospital because the hospital could not produce the records of her surgical procedure. Her expert could not give an opinion as to the negligence of the hospital without those records. The court held that the problem could be solved by the use of rebuttable presumptions which could either shift the burden of producing evidence or the burden of proof.
In Welsh v. U.S., 844 F.2d 1239 (6th Cir.1988), there is a comprehensive discussion of cases involving different fact situations where evidence has been lost, and the presumptions or inferences the courts have fashioned in order to avoid the ultimate sanction of dismissal. The sixth circuit relied extensively on Valcin.
Analyzing the present factual situation in light of the above cases we conclude that there is insufficient prejudice demonstrated by this record to support the trial court's ruling that the plaintiff would be precluded from putting on any evidence relating to the garage door opener system including the power cord. Since the loss of this evidence, so far as this record shows, was inadvertent and not for improper purpose, this sanction, which was the equivalent of a dismissal, was not warranted.
If the Cassisi inference would have been applicable, which we do not decide, the trial court's sanction that plaintiff would not get the benefit of that inference was certainly appropriate. Precluding any testimony from the expert who lost the evidence, and/or instructing the jury that the manufacturer was entitled to an inference that the lost evidence was not defective would also be within the court's discretion. In short, the court should make an attempt to fashion a solution to this problem which is less than the ultimate sanction of dismissal, but will still give the manufacturer a fair trial.
We recognize that the sanctions we have discussed, which are technically less harsh than precluding any evidence regarding the garage door opener system, may still leave the plaintiff without the means to prove its case. Although that result would be hard for this wholly innocent plaintiff to swallow, it was, after all, plaintiff's expert who was negligent. Where one of two innocent parties must suffer for the negligence of a third party, the loss falls on the party who enabled the third party to cause it. Welsh v. U.S., 844 F.2d 1239 (6th Cir.1988); See also, Nash Miami Motors v. Bandel, 160 Fla. 925, 37 So.2d 366 (1948).
Reversed.
ANSTEAD and DELL, JJ., concur.