648 So.2d 197 (1994)
METROPOLITAN DADE COUNTY, Appellant,
v.
Guillermo BERMUDEZ, Appellee.
No. 93-822.
District Court of Appeal of Florida, First District.
December 20, 1994.
Rehearing Denied January 24, 1995.
*198 Robert A. Ginsburg, Dade County Atty., John McInnis, Asst. County Atty., Dade County, Miami, for appellant.
Henry E. Fierro and Jay M. Levy, Miami, for appellee.
BENTON, Judge.
This workers' compensation case began with Guillermo Bermudez's claim for benefits on account of an automobile accident. Dade County, his employer, concedes the compensability of his injuries, but contends that it was entitled to reduce compensation benefits by twenty-five percent, because Mr. Bermudez was not wearing a seat belt at the time of the accident. The judge of compensation claims ruled against the County, finding that it did not prove this contention; but only after she ruled inadmissible two witnesses' expert opinions that Mr. Bermudez was not wearing a seat belt when the accident occurred. These witnesses were excluded on grounds that their testimony was based, at least in part, on examination of the accident vehicle, which the County sold for scrap before the hearing. We remand for a determination of whether the County willfully "destroyed" evidence or kept it from the claimant and for further proceedings as warranted.
The automobile accident occurred on October 13, 1990. Within minutes, Lieutenant Pierre Sada of the Dade County Fire Department, a paramedic, arrived at the accident scene. In providing emergency care to Mr. Bermudez and the car's other two occupants, he examined the accident vehicle and Mr. Bermudez to determine the "mechanism" of his injuries, because such information is often desired by emergency room physicians.
On November 6, 1990, the County hired Richard Christian, an accident reconstruction expert, and gave him access to the accident vehicle, of which it had taken custody. Mr. Christian submitted his report to the County, together with photographs of the vehicle, on November 13, 1990. The report concluded that Mr. Bermudez was not wearing a seat belt at the time of the accident.
Mr. Bermudez filed his claim for benefits on December 24, 1990. The claim for benefits acknowledges the County's assertion of the seat belt defense. On May 5, 1991, counsel for Mr. Bermudez filed a motion to produce the accident vehicle. The County responded on June 27, 1991, that the vehicle had been sold for scrap on May 7. But, at the merits hearing, documentary evidence and the testimony of a county employee made it appear that the vehicle may well have been in the County's possession until July 23, 1991. On this basis, the judge of *199 compensation claims refused to allow Mr. Christian's testimony, his report, or any evidence developed from an examination of the accident vehicle.
The County then proffered Lt. Sada's testimony concerning both the nature and extent of Mr. Bermudez's injuries and the results of Lt. Sada's examination of the automobile at the scene. Lt. Sada was also of the opinion that Mr. Bermudez had not been wearing a seat belt during the collision. The County now urges that the exclusion of the testimony and the opinions of Mr. Christian and Lt. Sada effectively precluded it from asserting the seat belt defense, and that a sanction of this severity was not justified.

Unfair Surprise
Lt. Sada's testimony was excluded on the additional independent ground that the County had listed him as a witness whose testimony would be presented by deposition, instead of in person. His deposition was never taken. The amended final order concludes that the County would have obtained an unfair advantage if it had been allowed to "surprise" the claimant with Lt. Sada's testimony at hearing, after listing him as a deposition witness.
A trial judge has broad discretion[1] in deciding whether to hear the testimony of a witness whose name has not been disclosed in accordance with a pretrial order. See Binger v. King Pest Control, 401 So.2d 1310, 1313-14 (Fla. 1981). But exclusion is a drastic remedy which should be utilized only in appropriate circumstances. Aguila-Rojas v. City Management Group Corp., 606 So.2d 765 (Fla. 3d DCA 1992); Louisville Scrap Material Co. v. Petroleum Packers, Inc., 566 So.2d 277, 278 (Fla. 2d DCA 1990); Acquisition Corp. of America v. American Cast Iron Pipe Co., 543 So.2d 878, 881 (Fla. 4th DCA 1989). Of paramount concern is protecting litigants from prejudicial surprises coming too late to be countered with reasonable effort.
The County listed Lt. Sada as a potential witness more than eight months before the merits hearing. The claimant had ample time for discovery in preparation for Lt. Sada's testimony, whether elicited on deposition or at hearing. In eight months' time, moreover, as the claimant should have been aware, a witness' schedule may change so that he can appear at the hearing, even though it originally appeared that he would be unavailable. The claimant's counsel was free to inquire of opposing counsel about this possibility.
Lt. Sada's testimony was nevertheless ruled inadmissible because he was called to testify at hearing, instead of on deposition. Any genuine prejudice to Mr. Bermudez could have been cured by a continuance or by some other means short of the exclusion of Lt. Sada's critical testimony. "The sanctions provisions for discovery violations are intended to effect compliance [or compensate for an advantage gained by a violation] not to punish." Hanna v. Industrial Labor Service, Inc., 636 So.2d 773, 776 (Fla. 1st DCA 1994). That Lt. Sada was listed as a "deposition witness" was not grounds to exclude his testimony at hearing.
The judge of compensation claims also excluded Mr. Bermudez's treating physician, Dr. Page, from testifying, because the County sought to add him to its witness list a little less than two weeks prior to the merits hearing. We cannot say the exclusion of the testimony of Dr. Page was error, see generally Alsobrook v. State Div. of Retirement, 600 So.2d 1173 (Fla. 1st DCA 1992), even though, in other circumstances, notice almost two weeks ahead of trial or hearing might preclude excluding a witness. It was within the discretion of the judge of compensation claims to deny this addition to the County's witness list, which came eight months after it *200 should have been included in the pretrial stipulation, particularly where the County could offer no good explanation for its failure timely to disclose a witness who had been known to the County since the date of the accident. See Metropolitan Dade County v. Sperling, 599 So.2d 209, 210 (Fla. 3d DCA 1992); Binger.

Unavailability of Evidence
The record is clear that the County sold the accident vehicle before the claimant's counsel examined it. The County's records indicate that the vehicle was still in the County's possession when it denied the claimant's request for production. If the records are accurate, the net effect of this misrepresentation was to deprive Mr. Bermudez of the opportunity to examine the vehicle, just as if it had actually been destroyed prior to his request for production.
In the amended final order, the judge of compensation claims denounced the County's "lack of a true effort to locate and preserve the vehicle in question, which they had already evaluated"; found that the County had "by neglect or design" made material misrepresentations to the claimant and his attorney; and concluded that the proper remedy was to exclude the testimony of Lt. Sada and Mr. Christian.
What sanctions are appropriate when a party fails to preserve evidence in its custody depends on the willfulness or bad faith, if any, of the party responsible for the loss of the evidence, the extent of prejudice suffered by the other party or parties, and what is required to cure the prejudice. See Federal Ins. Co. v. Allister Mfg. Co., 622 So.2d 1348, 1350-52 (Fla. 4th DCA 1993); Rockwell Int'l Corp. v. Menzies, 561 So.2d 677, 679-80 (Fla. 3d DCA 1990); Hirsch v. General Motors Corp., 266 N.J. Super. 222, 628 A.2d 1108, 1127-29 (1993).
Intentional destruction of evidence will almost invariably warrant imposition of sanctions against the offending party. Even dismissal of a claim or defense may be appropriate where there has been willful or malicious destruction of relevant evidence, see Alexander v. National Farmers Org., 687 F.2d 1173, 1205 (8th Cir.1982); Headley v. Chrysler Motor Corp., 141 F.R.D. 362, 365 (D.Mass. 1991); Allister Mfg. Co., 622 So.2d at 1351-52, but less drastic measures are ordinarily appropriate where relevant evidence was inadvertently destroyed. See Public Health Trust of Dade County v. Valcin, 507 So.2d 596 (Fla. 1987) (rebuttable presumptions used to shift burden of production and/or proof concerning contents of lost medical records); Headley, 141 F.R.D. at 365 (exclusion of expert evidence); Allister Mfg. Co., 622 So.2d at 1352 (exclusion of expert testimony and/or use of inferences favorable to prejudiced party); Hirsch, 628 A.2d at 1129-30 (exclusion of expert evidence).
After the County had gained exclusive possession of the wrecked automobile, it retained Mr. Christian to perform an expert evaluation of the car and a reconstruction of the accident. Mr. Christian's report, submitted on November 13, 1991, led the County to assert the seat belt defense. The County knew or should have known when it received the report, if not before, that the vehicle was material evidence which it had a duty to preserve. County of Solano v. Delancy, 264 Cal. Rptr. 721, 729-30 (Cal.Ct.App. 1989) (ordered not published); Hirsch, 628 A.2d at 1122-24.
Exclusion of expert testimony based on an examination of evidence which a party has taken custody of but subsequently loses is ordinarily appropriate, where it appears that the party offering the evidence and responsible for the loss knew, or reasonably should have known, that the evidence was material to pending or impending litigation. Headley v. Chrysler Motor Corp., 141 F.R.D. at 365; Allister Mfg. Co., 622 So.2d at 1351-52; American Family Ins. Co. v. Village Pontiac-GMC, Inc., 223 Ill. App.3d 624, 585 N.E.2d 1115, 166 Ill.Dec. 93 (Ill. App. 2 Dist. 1992); Fire Ins. Exchange v. Zenith Radio Corp., 103 Nev. 648, 747 P.2d 911, 914 (Nev. 1987); Hirsch, 628 A.2d at 1129-31.
The judge of compensation claims was within her discretion in ruling that Mr. Christian would not be permitted to present his expert opinion regarding the details of the accident even if the County was merely *201 negligent in preventing Mr. Bermudez's examining the accident vehicle. See Headley, 141 F.R.D. at 365 (where plaintiff sold accident vehicle after his expert had examined it, but there was no evidence of malicious intent to deprive defense of evidence, proper remedy was to exclude any and all of plaintiff's expert evidence); Allister Mfg. Co., 622 So.2d at 1351-52 (exclusion of testimony of plaintiff's expert who examined defective garage-door-opener and then accidentally discarded it would be within trial court's discretion); American Family Ins. Co., 166 Ill. Dec. at 96-97, 585 N.E.2d at 1118-19 (plaintiff's insurer sold car after securing expert examination; plaintiff's expert evidence excluded); Fire Ins. Exchange, 747 P.2d at 914 (plaintiff's expert determined that television started fire, but did not preserve remains; expert's testimony excluded); Hirsch, 628 A.2d at 1129-31 (plaintiff's insurer sold car after securing expert examination; plaintiff's expert evidence excluded).

First Witness At Scene
On the other hand, Lt. Sada arrived on the scene shortly after the accident, not as a forensic specialist, but in order to render aid to the victims. His examination of Mr. Bermudez and his inspection of the automobile were undertaken in the course of performing his duties as a paramedic. Neither Mr. Bermudez nor the County requested that Lt. Sada undertake any examination in anticipation of litigation. Although Lt. Sada was performing his duties as an employee of another county agency, the County had no control over the timing of his examination of the accident scene, or over his access to participants and vehicles.
At the time Lt. Sada saw the car, it was not within the County's exclusive control. Any dereliction by the County as custodian of the evidence occurred long after Lt. Sada's observation and examination of the accident vehicle. Lt. Sada's proffered testimony was, in part, that of a witness to the accident scene, although the proffer included expert opinions. His testimony would have recounted sense impressions and related his professional evaluation of the accident, based on his observations at the scene and on his training and experience.
Lt. Sada's role in the present case resembles that of the two police officers in People v. Madison, 264 Ill. App.3d 481, 637 N.E.2d 1074, 1075, 202 Ill.Dec. 338, 339 (1 Dist. 1994), who observed Madison holding what they concluded was "Mexican brown heroin." Chemical analysis reinforced their suspicions. By the time the case came to trial, the police department had destroyed the putative heroin in a routine "burn down," despite a request that the evidence be preserved. Madison, 202 Ill.Dec. at 340, 637 N.E.2d at 1077. Reversing a conviction for possession, the court held the prosecution responsible for the loss of the evidence and remanded for a new trial from which the state's chemist's testimony and the chemical analysis results were to be excluded. Madison, 202 Ill.Dec. at 346, 637 N.E.2d at 1085. The court did not order exclusion of the officers' testimony, however, expressly holding that the state would be permitted to prove, if it could, the presence of heroin by evidence other than chemical analysis. Madison, 202 Ill.Dec. at 346, 637 N.E.2d at 1085.
Similarly, the state was allowed to call a witness who had observed evidence on the scene in State v. Leslie, 147 Ariz. 38, 708 P.2d 719 (Ariz. 1985). There an investigating officer testified[2] that small red flecks he discovered *202 on the grille and near a front light on the victim's car were blood. Leslie, 147 Ariz. at 45-46, 708 P.2d at 726-27. The red flecks were photographed, but they were not preserved for expert analysis, because the investigating officer believed they were too small to analyze.[3] The Leslie court did not sanction the state by ordering the testimony of the investigating officer excluded on remand. Leslie, 147 Ariz. at 47, 708 P.2d at 728. Instead, the court ordered a new trial with an instruction to the jury that, if it found that the state had "destroyed, caused to be destroyed, or allowed to be destroyed any evidence whose contents or quality are in issue," it could infer that the "true fact" of the lost evidence was against the interest of the state. Leslie, 147 Ariz. at 47, 708 P.2d at 728. The Leslie court's remedy for the prosecution's loss of physical evidence was, in effect, to authorize a rebuttable presumption that the flecks were not blood.
In the present case, the exclusion of all the County's evidence concerning the accident vehicle is the functional equivalent of striking the seat belt defense or establishing an irrebuttable factual presumption that Mr. Bermudez was wearing a seat belt. Unless the County acted willfully in precluding defense examination of the accident vehicle, a rebuttable presumption against the County is a sufficient remedy under the criteria discussed in Allister and Hirsch above. Cf. Commonwealth Savings and Loan Ass'n v. Tubero, 569 So.2d 1271, 1273 (Fla. 1990) (failure to respond to discovery requests despite court order compelling compliance justifies default or dismissal only where trial court has expressly found willful noncompliance); A Professional Nurse, Inc. v. State Dep't of Health and Rehabilitative Servs., 519 So.2d 1061, 1064 (Fla. 1st DCA 1988) (hearing officer's exclusion of evidence amounted to dismissal, which was too severe a sanction for failure to comply with hearing officer's order to respond to opposing counsel's request for production).
If, like the authorities in Madison and Leslie, the County was merely negligent, the testimony of Lt. Sada as an on-the-scene observer, even though he viewed the scene as an "expert," should not automatically have been excluded. Cf. Blue Grass Shows, Inc. v. Collins, 614 So.2d 626, 626-27 (Fla. 1st DCA 1993) (paramedic's factual observations at accident scene admissible). Even negligent denial of access would entitle the judge of compensation claims to infer that examination of the accident vehicle would yield evidence detrimental to the County's position; but the County should have the opportunity to overcome that inference with other evidence, including Lt. Sada's testimony, unless the County willfully rendered material evidence unavailable or unless its negligence made it impossible for the claimant to present its case.
On remand, the judge of compensation claims should determine whether the County acted willfully to deny Mr. Bermudez access to the accident vehicle. If the judge of compensation claims concludes that the County deliberately deprived the other side  and so the tribunal  of access to this evidence as part of its effort to establish the seat belt defense, striking the defense or excluding the County's witnesses would not be too severe a sanction.
If the judge of compensation claims concludes that the County did not act willfully, consideration should be given to whether the County's negligence would have prevented access if claimant's counsel had requested production more promptly; whether the claimant can fairly meet the testimony of Lt. Sada, using photographs[4] or the testimony of *203 others at the scene, without having conducted an examination of the vehicle; and whether the prejudice to the claimant, if any, may be cured by some less drastic means than disallowing Lt. Sada's testimony.
Accordingly, the order of the judge of compensation claims is reversed and remanded for further proceedings. The original final order entered by the judge of compensation claims on February 16, 1993, noted the lack of evidence at the merits hearing relating to the "notice to controvert" or the notice of the County's intent to assert the lack of a seat belt as an affirmative defense. On remand, evidence may be taken on this question also.
BOOTH and ALLEN, JJ., concur.
NOTES
[1] For purposes of our analysis, we assume that the discretion of a judge of compensation claims to impose sanctions for discovery violations is no less broad, except that contempt is not available to a judge of compensation claims. § 440.33, Fla. Stat. (1993). Compare Fla.R.Work.Comp.P. 4.090(d) with Fla.R.Civ.P. 1.380. Quasi-judicial proceedings conducted by executive branch factfinders can present questions regarding sanctions for discovery violations indistinguishable from those that arise in judicial proceedings. See generally W. Benton, Discovery in Professional Licensing Disciplinary Proceedings, Fla.B.J., June 1988, at 65.
[2] Although there was other compelling evidence against Leslie, the court found the officer's testimony crucial, because it tended to establish that the car was in the garage at the time of the murder, which contradicted Leslie's testimony that he never saw the victim when he burglarized her house and stole her car. Leslie, 147 Ariz. at 46, 708 P.2d at 727. Shortly before noon on the day of the murder, neighbors of Mrs. Rabb, the 70-year-old victim, noticed her dog running loose outside and went to check on her. Mrs. Rabb did not answer their knock, and her new white Oldsmobile was gone. Eventually, the neighbors discovered the victim's body in the garage. She had been hit approximately twenty times around her head. A small blood-stained ax was found in the garage. The same morning, defendant attempted to pawn several pieces of the victim's silver. When asked for his car registration, Leslie left the store and drove away in a new white Oldsmobile, leaving behind the silver and his driver's license. Shortly after noon, Leslie picked up two female hitchhikers. He was wearing women's shoes. One of the women took from the car a ring which belonged to the victim. When Arizona police attempted to stop Leslie for speeding, he stopped at a gas station and fled on foot. At trial, Leslie testified that he had stolen the silver from Mrs. Rabb's house, but denied killing her, stating that he never saw her that day. Leslie, 147 Ariz. at 43, 708 P.2d at 723.
[3] The state presented expert testimony that chemical analysis could have determined whether the flecks were actually blood, but that the amount was insufficient to permit identification of blood type. Leslie, 147 Ariz. at 46, 708 P.2d at 727.
[4] The finding in paragraph nine of the amended final order that the photographs of the accident vehicle were taken by the County, after Mr. Bermudez's request for production of the photographs, is not supported by the record. The only evidence in the record regarding their origin indicates that the County's accident reconstruction expert, Mr. Christian, took the photographs as part of his evaluation of the vehicle in November 1990, some five months before Mr. Bermudez requested their production. The order is also unclear as to the judge's ruling on the admissibility of the photographs. This is an issue which should be clarified on remand.