865 So.2d 537 (2003)
Norman C. FLEURY, Jr., and Karen Fleury, Appellants,
v.
BIOMET, INC., a foreign corporation, and Mike Trieste, Appellees.
No. 2D02-2103.
District Court of Appeal of Florida, Second District.
December 17, 2003.
Rehearing Denied February 17, 2004.
John P. Graves, Jr., of Graves & Stephan, Chartered, Sarasota, for Appellants.
Marie A. Borland and Robert B. Gough, III of Hill, Ward & Henderson, P.A., Tampa, and A. Lamar Matthews, Jr. of Matthews, Eastmoore, Hardy, Crauwels & Garcia, P.A., Sarasota, for Appellees.
NORTHCUTT, Judge.
Norman Fleury, Jr., and his wife, Karen Fleury, filed a negligence and products liability action stemming from the premature failure of Mr. Fleury's artificial knee. The defendants, Biomet, Inc., and Mike Trieste, won a final summary judgment *538 after the circuit court entered an order imposing sanctions for the spoliation of evidence. We reverse.
For purposes of reviewing the summary judgment, we view the allegations and evidence of record in the light most favorable to the Fleurys, treating any factual disputes as resolved in their favor. Thus viewed, the record reflects the following:
The product at the center of this controversy was an artificial knee that was designed and manufactured by Biomet and sold by Trieste, Biomet's exclusive distributor in Charlotte County, Florida. The specific artificial knee at issue was packaged by Biomet on October 11, 1990, and sterilized the next day. Biomet then placed the knee in its inventory. It remained there until December 1994, when it was employed in a total right knee replacement performed on Mr. Fleury by Dr. Douglas Nuelle, an orthopedic surgeon.
The knee consisted of tibial, patella, and femoral components. This litigation focused on the tibial component, which in significant part was formed by molding a polymer known as ultra-high molecular weight polyethylene, or UHMWPE, to a metal tray. The expected life of a tibial component such as the one implanted in Mr. Fleury is ten to fifteen years. His failed prematurely, after only two years. Eventually, in October 1999, another orthopedic surgeon, Dr. Vance Askins, removed Mr. Fleury's artificial knee and replaced it with another one.
When Dr. Askins performed the 1999 surgery, he found that all three main components of Mr. Fleury's artificial knee-the femoral, patella, and tibial-were loose. The polyethylene that had been molded to the tibial tray had failed. The metal was exposed and there were small pieces of polyethylene floating in Mr. Fleury's knee.
In the litigation the Fleurys and their experts contended that the polyethylene failed because it had oxidized over time due to the process Biomet had employed to sterilize the artificial knee. When the knee was manufactured in 1990, Biomet sterilized it by subjecting it to gamma rays. A Biomet representative testified in deposition that problems with oxidation led the company to alter its sterilization protocol in mid-1992. Henceforth, Biomet sterilized its polyethylene products by subjecting them to gamma rays in an oxygen-free environment, which was achieved by injecting argon gas into the packaging to force out any oxygen. Two years later, when Biomet sold the circa 1990 artificial knee that was implanted in Mr. Fleury, it did not warn that the knee had been sterilized by a method that could cause it to oxidize over time.
The hospital where Dr. Askins performed Mr. Fleury's second knee replacement discarded the Biomet artificial knee within hours after it was removed from Mr. Fleury's leg. This was done pursuant to the hospital's standard protocol for handling and disposing of bio-hazardous waste. Under the protocol, Dr. Askins could have directed the hospital to preserve the knee, but he did not.
About six weeks before the scheduled trial in the Fleurys' lawsuit, Biomet and Trieste moved to dismiss, contending that their inability to examine and test the artificial knee prevented them from defending against the Fleurys' allegations. The defendants filed an affidavit by Stephen Li, Ph.D., the president of a medical device testing company and an expert in polymers used in medical devices. Dr. Li expressed doubt that Mr. Fleury's artificial knee failed because the polyethylene in the tibial component had oxidized. He asserted that there was no clinical or laboratory evidence that a directly molded tibial component *539 that had been gamma sterilized in air would suffer clinically significant oxidation in the first nine years after its irradiation, either on the shelf or implanted. Dr. Li also maintained that it would be impossible to attribute the failure of Mr. Fleury's knee to oxidation without examining and testing the product. He went on to list some of the examinations and tests that might be performed if the product were available.
When ruling on the defendants' motion to dismiss, the circuit court found that none of the parties to the lawsuit were at fault for the loss of the artificial knee, and that the spoliation of this evidence was inadvertent. Still, the court noted that there was some evidence to suggest that before Mr. Fleury's second surgery he and Dr. Askins believed that the Biomet knee was defective. Therefore, although the court declined to dismiss the suit, it ordered that at trial Dr. Askins and the Fleurys' expert witnesses would not be permitted to opine either as to the cause of any observed wear of the artificial knee's polyethylene component or that oxidation contributed to the wear. In addition, the jurors would be instructed that they must presume that the product was not defective.
Thus deprived of their ability to prove the causation element of their cause of action, the Fleurys suffered the summary judgment under review. We reverse because the circuit court should not have entered the spoliation order.
Sanctions for the spoliation of evidence may be imposed when a party fails to preserve evidence in its custody. Under the facts described above, it is debatable whether the subject artificial knee was ever in the Fleurys' custody. See Derosier v. Cooper Tire & Rubber Co., 819 So.2d 143 (Fla. 4th DCA 2002) (holding that spoliation of evidence principles did not apply where tread that had separated from allegedly defective tire had been discarded by persons unknown immediately after automobile accident while plaintiffs were being transported to the hospital, and thus evidence was not in plaintiffs' custody when it was lost), review denied, 837 So.2d 409 (Fla.2003).
Even when it is clear that evidence has been lost while in the custody of a party, the appropriate sanction varies according to the willfulness or bad faith, if any, of the party who lost the evidence, the extent of the prejudice suffered by the other party, and what is required to cure the prejudice. Harrell v. Mayberry, 754 So.2d 742, 745 (Fla. 2d DCA 2000); Sponco Mfg., Inc. v. Alcover, 656 So.2d 629, 630 (Fla. 3d DCA 1995). Dismissal or default, the harshest of all sanctions, are reserved for cases in which one party's loss of evidence renders the opposing party completely unable to proceed with its case or defense. Harrell, 754 So.2d at 745.
In this case, the circuit court determined that neither party was at fault for the loss of the evidence, and that dismissal of the Fleurys' suit would be too harsh a sanction. Yet the court's sanction order accomplished the same result by depriving the Fleurys of any ability to prove a necessary element of their cause of action. Thus, although recognizing that dismissal was uncalled for here, the circuit court imposed the equivalent of a dismissal. See Fed. Ins. Co. v. Allister Mfg. Co., 622 So.2d 1348, 1350 (Fla. 4th DCA 1993) (recognizing that precluding plaintiff from presenting evidence regarding faulty garage door system after expert inadvertently discarded part of product was equivalent of dismissal). This, in itself, would be cause for reversal.
Beyond that, Biomet and Trieste suffered no real prejudice from the loss of *540 the evidence. Unlike cases in which the offending party has examined or tested evidence and then lost it before the opposing party has had an opportunity to do so, in this case both parties are in the same position. Neither side will be able to present expert testimony founded on the experts' examination or testing of the product. Therefore, it cannot be said that the loss of the evidence put the defendants at a disadvantage in the litigation. See Derosier, 819 So.2d at 145 (reversing summary judgment following spoliation order where tread from allegedly defective tire was discarded immediately after automobile accident and therefore was not available to either party, and defendant's expert stated without the tire neither he nor any other expert could determine why tread separated from tire); Aldrich v. Roche Biomedical Lab., Inc., 737 So.2d 1124, 1126 (Fla. 5th DCA 1999) (reversing summary judgment following spoliation order where spoliation of evidence put both parties in same position).
The circuit court having determined that the spoliation of the evidence in this case was inadvertent and that none of the parties were at fault, and it being apparent that the defendants were not prejudiced by the spoliation of the evidence, there was no basis for imposing sanctions on its account. For this reason we reverse the summary judgment and the spoliation order that gave rise to it, and we remand for further proceedings. See Aldrich, 737 So.2d at 1126.
The Fleurys also contend the circuit court erred by granting the defendants' motion in limine to exclude testimony by some of its expert witnesses. But, as Biomet and Trieste point out, the court did not exclude the witnesses' testimony. Rather, it limited the introduction of the witnesses' videotaped depositions while allowing the Fleurys to present the witnesses' live testimony so that the court could more readily evaluate their qualifications. Under the circumstances of this case, we do not find that the court abused its discretion. That said, we note that the Fleurys are free to seek a reconsideration of the ruling from the circuit court, perhaps after taking supplemental depositions of the experts in order to allay the court's concerns.
Last, the Fleurys complain of the circuit court's refusal to compel compliance with their demand for discovery of reports concerning prior similar claims. The defendants objected to the discovery demand on the grounds that it was overbroad and was unduly burdensome. On the latter issue, the record reflects that the Fleurys were willing to pay the cost of producing the material, but the motion to compel was not heard until a few days prior to trial. Given the time necessary for the defendants to comply with the discovery demand, we do not think the court abused its discretion by declining to order compliance on the eve of trial. However, we note that the order denying the motion to compel was absolute, suggesting that the court did not address the question whether the discovery demand was overbroad. Therefore, we affirm the order without prejudice to the Fleurys' right to renew their motion to compel. In that event, the court will have an opportunity to determine whether the discovery demand is overbroad and, if so, to limit it appropriately in accordance with American Medical Systems, Inc. v. Osborne, 651 So.2d 209 (Fla. 2d DCA 1995).
Affirmed in part, reversed in part, and remanded for further proceedings.
ALTENBERND, C.J., and COVINGTON, J., Concur.