CASANUEVA, Judge.
In this products liability and personal injury suit, the defendants, Biomet, Inc. and one of its distributors, Mike Trieste, petition for a writ of certiorari to quash an order granting the motion of the plaintiffs, Norman and Karen Fleury, to compel discovery. We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.030(b)(2)(A). See Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla.1987); Ameritrust Ins. Corp. v. O’Donnell Landscapes, Inc., 899 So.2d 1205 (Fla. 2d DCA 2005). Biomet and Trieste contend that the order compelling discovery is over-broad and burdensome. We reject the contention that the order is overbroad but hold that discovery should be conducted using a modified, less burdensome procedure. We grant the petition, quash the order of the trial court, and remand for entry of an amended order.
Biomet is a manufacturer of orthopedic medical devices. Among its thousands of products are replacement knee joints and other products such as artificial hips, *707 shoulders, wrists, and ankles. It manufactured the replacement knee joint that was implanted in Mr. Fleury in December 1994. The specific medical device at issue is a Biomet AGO 2000 knee implant containing a direct compression molded ultra high molecular weight polyethylene [UHMWPE] that forms the weight-bearing surface at the top of the tibial component of the joint. Mr. Fleury alleges in his lawsuit that well before the ten-to-fifteen-year normal, intended, and anticipated useful life of his knee prosthesis, it partially decomposed and disintegrated, totally failed in its operation, and caused him to undergo a second knee replacement surgery in October 1999. He theorizes that his prosthesis, formed by using molded rather than machined or sculpted UHMWPE, failed due to oxidation as a result of the gamma ray sterilization and packaging procedure that was done in the presence of oxygen rather than in the presence of an inert gas such as argon. He also claims that the fact that his prosthesis sat in Biomet’s inventory for several years before it was sold to him contributed to the oxidation and its premature failure.
When Mr. Fleury underwent the second surgery in October 1999, the surgeon did not direct that the original prosthesis be preserved; it was therefore discarded in accordance with normal medical procedure without anyone having an opportunity to examine it in detail to determine the potential cause of its failure. This spoliation of evidence resulted in the prior appearance of the Fleurys’ lawsuit before this court. Fleury v. Biomet, Inc., 865 So.2d 537 (Fla. 2d DCA 2004) (reversing summary judgment and remanding for further proceedings). Because we reversed for further proceedings, we did not reach the discovery issue that the Fleurys had also raised in that appeal. Before they suffered summary judgment, the trial court had refused to compel compliance with the Fleurys’ demand for discovery of complaints or claims of failure of Biomet’s prostheses. We could not determine from the record at that time the trial court’s basis for denying the Fleurys’ motion to compel discovery. Instead, we affirmed the trial court’s order without prejudice to the Fleurys’ right to renew their motion to compel on remand, thus giving the trial court an opportunity to determine whether the discovery demand is overbroad and, if so, to limit it in accordance with American Medical Systems, Inc. v. Osborne, 651 So.2d 209 (Fla. 2d DCA 1995). Fleury, 865 So.2d at 540.
On remand, the Fleurys renewed their motion to compel discovery and sought information relating to all claims involving polyethylene components of all Biomet products manufactured between 1990 and 1997, regardless of whether the claim concerned a product substantially similar to the prosthetic knee and regardless of whether it alleged similar polyethylene wear. Biomet again objected, contending that the discovery request was overbroad and burdensome, especially in light of the fact that it had already produced discovery relating to polyethylene claims and complaints involving the specific model number part at issue. Beyond that, it had already voluntarily submitted information relating to all claims and complaints about any size replacement knee. Biomet further contended that it had provided claims information on all artificial knees in the entire AGO system, even though they were not substantially similar because not every prosthetic knee contained molded UHMWPE. What the Fleurys were seeking, Biomet argued, was to sift through their entire database of complaint reports in an attempt to find something that would support their theory.
At the hearing on the Fleurys’ motion to compel, Biomet’s counsel explained that if *708 it were to comply with the discovery request for that eight-year time range, it would produce a database of 4200 reports. Biomet personnel would then have to sift through each of these reports, which are filed in its computer database according to product family, i.e., hips, knees, ankles, shoulders, etc., because each report functions only as a cover sheet for the backup documents that provide the specifics of each complaint. After examining each report line-by-line to determine whether a polyethylene component was involved, the employee would then have to inspect each set of backup documents to determine if that complaint falls within the parameters of the discovery request. The reports cover any possible complaint, from product failure, like Mr. Fleury experienced, to packaging problems to shipping delays. Biomet’s records custodian testified in deposition that to comply with such a request would take her at least two weeks of full-time work, assisted during all that time by at least two additional personnel, one of whom would have to be a paralegal.
The Fleurys’ counsel explained that he did not want the entire database of information from the backup documents covered by the 4200 reports, nor did he want Biomet employees to do what Biomet envisioned was necessary to comply with his discovery request. He would be satisfied at this stage with his own review of the reports to flag any that might need further investigation. He said that he had done this sort of digesting and indexing in numerous other suits, often chaperoned at the defense counsel’s office or the site where the reports were kept, and he was willing to do the same in this case. The parties agree that to comply with the federal Health Insurance Portability and Accountability Act of 1996, any sort of information identifying individuals would be redacted from the reports.
After hearing argument and reviewing many depositions and affidavits, the trial court granted the Fleurys’ motion to compel discovery. The court ordered Biomet to produce all information in its records dealing with complaints about Biomet’s products that contained either molded or machined UHMWPE if the product was intended for insertion into the human body. It is this broad discovery order that Biomet seeks to quash.
We agree with the trial court that because the Fleurys’ theory of liability depends upon not only the nature of the polyethylene used in his knee prosthesis but also its sterilization and storage, the products encompassed in the court’s order, all of which contain polyethylene, are substantially similar for discovery purposes, despite the fact that insertion into different joints of the body impacts wear rates or other influences that could cause failure. Cf. Osborne, 651 So.2d 209 (remanding for further proceedings on substantial similarity before similar accidents or incidents are discoverable in a lawsuit about the failure of a penile implant). Nevertheless, we hold further that to balance the Fleu-rys’ need for evidence in Biomet’s records of polyethylene failures when used in human joint replacement parts with Biomet’s right to be free from burdensome discovery orders, the court should have granted the motion to compel as outlined by the Fleurys’ counsel at the hearing. Biomet admitted that simply printing the 4200 cover sheets would cost substantially less in time and money than the court-ordered procedure, and the Fleurys’ counsel offered to pay that cost. Because the Fleu-rys’ counsel stated at the hearing that he would be satisfied at this stage with his own review of the 4200 cover sheets, Biom-et need not provide its own personnel to inspect each report or research the backup documents for each complaint. We do not regard this procedure as a fishing license *709 for the Fleurys. The information identifying patients must be redacted as previously agreed between the parties. If the Fleurys’ counsel flags a report indicating he desires to see the backup documents, Biomet will have an opportunity to dispute the relevance and similarity of each request. We are certain that, on remand, the parties can reach mutually agreeable terms for the Fleurys’ counsel to view the 4200 reports.
Petition for certiorari granted, order on motion to compel discovery quashed, and remanded for proceedings in conformance with this opinion.
STRINGER, J., and DANAHY, PAUL W., Senior Judge, Concur.