THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROLAND THOMPSON, Defendant-Appellant.

First District (3rd Division)   No. 1—92—3294

Opinion filed July 20, 1994.

414

Rita A. Fry, Public Defender, of Chicago (Lester Finkle, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Laura L. Morrison, Matthew L. Modhe, and Timothy B. Felgenhauer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

Following a bench trial, defendant, Roland Thompson, was convicted of the February 23, 1973, murder (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(1) (now 720 ILCS 5/9—1(a)(1) (West 1992))) of Jack Akins. After defendant elected to be sentenced under the sentencing provisions in effect at the time of the murder, he was sentenced to an indeterminate term of 25 to 75 years' imprisonment. On appeal, defendant asserts that (1) the trial court erred in failing to dismiss the indictment due to prejudice; and (2) he was not proven guilty beyond a reasonable doubt. Based on the reasons that follow, we affirm.

Prior to a bench trial, the trial court conducted a hearing on defendant's motion to dismiss his indictment based on the 18-year period between the murder and the indictment. Defendant presented evidence that Chicago police investigator Brunhart interviewed neighbors in the area of Luella Park shortly after the murder. According to Brunhart's testimony to the coroner's inquiry on May 1, 1973, several witnesses told him that there had been a running gun battle at 11:30 p.m. near Luella Park on February 23, 1973. Brunhart's notes indicated that Edith Chapman, who is now deceased, told him that at 11:30 p.m. on February 23, 1973, she heard five or six gunshots outside her home, which was one-half block from Luella Park.

Marilyn Strorigl told Brunhart that she heard five or six gunshots around 11:30 p.m. outside her home at 10113 South Luella, followed by two more shots. Ms. C. Clark said that she heard several gunshots at that time outside her home at 10047 South Luella. Ms. Clark's son

Michael told Brunhart that he was walking by Luella Park when he heard shots and saw a man shooting in a westerly direction. Martin Luther said that he heard gunshots at the same time and saw a car turn south on Crandon Street, which is one block east of Luella.

The defense counsel argued that he was unable to locate those witnesses due to the passage of time. Strorigl and the Clarks had moved from the neighborhood and could not be located. Defense counsel spoke with Martin Luther, who could not remember hearing gunshots. He remembered only that the police interviewed him regarding the shooting and that blood was found on his driveway. The trial court denied defendant's motion to dismiss his indictment.

At trial, Aaron Akins testified that his son, Jack, lived with him at 10046 S. Bensley Street, Chicago, on February 23, 1973. That night, Jack left home around 8:45 p.m. to go to a nearby drugstore.

Daniel Judon testified that he saw Jack Akins and defendant near 100th and Bensley Streets on February 23, 1973. The three men walked to a liquor store at 100th and Yates Streets to get a drink, but as they approached the store, Earl Martin, Jackie Robinson, and a man known as Satan drove up in a Toronado. The three men got into the car and rode to Walgreens at 95th Street and Jeffrey Avenue, where they could buy liquor at a cheaper price. At Walgreens, the men pooled their money and bought beer and whiskey.

According to Judon, he was seated in the middle back seat; Robinson was on his left; Akins was on his right; Satan was driving; Martin was in the front middle seat; and defendant was in the front right seat. From Walgreens, Satan drove to Luella Park, which is located at 100th and Luella Streets. As they were getting ready to drink, defendant suddenly turned around and said "light some fire." Judon then heard a pop. When he looked around, he saw defendant with a gun in his hand and heard Akins cough.

Defendant told everyone to keep their mouths shut and then told Satan to drive off. Defendant directed Satan to the back of a house. During that time, defendant had the gun pointed at the men in the back seat.

When the car stopped, Martin got out of the car and ran. Defendant asked the other men to help him remove the body from the car, but they all refused. Finally, defendant pulled the body out by himself and left it lying on the ground. Satan then drove the men back to 100th Street, where they all went their own way. Defendant walked with Judon and told him not to say anything, that he knew where his mother worked and where she got off the bus.

A week later, Judon saw defendant, who said that he shot Akins because Akins had called him a half-breed just as his mother's killer

had said. Judon testified that he knew that defendant's mother was white and had been killed a year earlier.

On cross-examination, Judon stated that he never voluntarily came forward with his story or contacted the police until they contacted him in 1991. Judon had not seen defendant for at least 10 years prior to the trial. In 1973, Judon was dating Rochelle Harris, who became involved with defendant shortly after she broke up with Judon. Subsequently, Harris and defendant had a child together.

Judon's testimony differed from his grand jury testimony in several respects, but he could not remember his grand jury testimony. At the grand jury hearing, Judon had testified that defendant had been in the driver's seat, that the men had started drinking prior to the shooting, and that defendant's mother had been killed a week before the Akins murder.

Earl Martin testified that on February 23, 1973, he got into a red Toronado at Luella Park with Judon, Robinson, defendant, Satan, and a man whose name he did not know. It was determined that the unnamed man was Jack Akins. The men drove to the 95th Street Walgreens, bought liquor, and returned to the park. According to Martin, he was seated in the front middle seat. Defendant was on his right, and Akins was in the middle back seat between Judon and Robinson.

Suddenly, Martin heard a pop inside the car and then defendant told the driver to pull off. As defendant directed the driver, no one else spoke. Martin never saw anyone with a gun.

Chicago police detective George Karl testified that he was given a letter written by defendant's brother, Mitchell Thompson, on January 19, 1991, concerning Akins' murder. Karl spoke 8 to 10 times by phone with Mitchell, who was in the county jail in Mason City, Iowa. As a result of those conversations, Karl interviewed Martin, Judon, and Robinson. On January 23, 1991, an arrest warrant was obtained for defendant, who was also in the Mason City, Iowa, county jail. Defendant was then transported to Chicago.

Chicago police officer Joseph Davenport testified that on February 24, 1973, he lived at 10138 South Van Vlissingen Street in Chicago. When he arrived home from work after 2:30 a.m., he found a body in front of his garage. Davenport turned the man's body over and saw that he had been shot over his left eye.

Chicago police officer Makowski testified that he was called to the alley at 10138 South Van Vlissingen on February 24, 1973. He found identification and seven or eight dollars on the body.

Through stipulation, Dr. P. Culala, an assistant Cook County medical examiner, testified that the bullet entered above Akins' left

eye, fractured his skull, lacerated and penetrated the left side of the brain, and lodged in the back of his head. In Dr. Culala's opinion, death was caused by one gunshot to the head. The toxicology report showed 155 milligrams of alcohol were present in Akins' blood. There was no mention of stippling, tattooing or other evidence of close-range firing.

Defendant's case consisted of Judon's stipulated June 2, 1991, grand jury testimony, during which he testified that the men in the car started drinking before the shooting. It was also stipulated that defendant's mother, Arlene Thompson, was killed on October 31, 1971.

In its finding of guilty, the trial court noted that the inconsistencies that existed in the testimony were minor and were explained by the passage of time. The trial court stated that it believed both Judon and Martin, who were clear, convincing, and credible. After defendant elected to be sentenced under the indeterminate sentencing law as it existed in 1973, he was sentenced to 25 to 75 years' imprisonment.

Defendant's first assertion on appeal is that the trial court erred by failing to dismiss the indictment. We disagree.

●1 Although there is no statute of limitation for murder (Ill. Rev. Stat. 1973, ch. 38, par. 3—5(a) (now 720 ILCS 5/3—5(a) (West 1992))), statutes of limitation do not fully define a defendant's rights with respect to events occurring prior to an indictment. (*United States v. Marion* (1971), 404 U.S. 307, 324, 30 L. Ed. 2d 468, 480-81, 92 S. Ct. 455, 465; *People v. Lawson* (1977), 67 Ill. 2d 449, 457, 367 N.E.2d 1244.) The trial court is authorized to dismiss an indictment if there has been a clear denial of due process. *Marion*, 404 U.S. at 324, 30 L. Ed. 2d at 481, 92 S. Ct. at 465; *Lawson*, 67 Ill. 2d at 455.

In determining whether a due process violation has occurred, the court should consider the reasons for the delay as well as the prejudice to the accused. (*United States v. Lovasco* (1977), 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044.) The court must proceed with restraint and dismiss the indictment only when the due process violation is clear and has been found with certainty. *People v. Young* (1991), 220 Ill. App. 3d 488, 492, 581 N.E.2d 241.

●2 To dismiss an indictment due to delay, there is a two-step process. First, a defendant must make a clear showing of actual and substantial prejudice. A possibility of prejudice is not enough. *Lawson*, 67 Ill. 2d at 459.

If such a showing is made, the burden shifts to the State to show the reasonableness or necessity of the delay. The court must then make a determination based on a balancing of the interests of the de-

fendant and the public. Factors to be considered include the length of the delay and the seriousness of the crime. *Lawson*, 67 Ill. 2d at 459.

Initially, the State asserts that defendant waived this issue because he did not specifically raise it in his motion for a new trial.

●3 Although the general rule in Illinois is that failure by a defendant to raise an issue in his post-trial motion constitutes a waiver, it is well established that in the interest of justice, a claimed error can be considered under the plain error doctrine if it potentially affects a substantial right of the defendant. (*People v. Martin* (1988), 119 Ill. 2d 453, 458, 519 N.E.2d 884.) When the defendant fails to preserve the issue in a post-trial motion, the reviewing court will consider constitutional issues that have properly been raised at trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 190, 522 N.E.2d 1124.) Since defendant properly raised the issue at trial and any error would potentially affect defendant's substantial right of due process, we will consider this issue under the plain error doctrine.

●4 We conclude that there was no due process violation because defendant did not make a clear showing of actual and substantial prejudice. The testimony of the unavailable witnesses would not have directly contradicted the eyewitness testimony. Judon and Martin testified that they were in the car when Akins was murdered at an unspecified time. In contrast, none of the unavailable witnesses were eyewitnesses to Akins' murder. At best, they would have testified that they heard gunshots in the same area at 11:30 p.m. There was no evidence that the shots they heard killed Akins. That is not sufficient to show that defendant was actually or substantially prejudiced.

Furthermore, Judon and Martin both testified that they did not go to the police after the murder because defendant had threatened them. It was reasonable for Judon and Martin to believe that defendant would carry out his threat since they witnessed him kill Akins for apparently no reason.

Since defendant did not make a clear showing of actual and substantial prejudice, the burden does not shift to the State to show the reasonableness or necessity of the delay. Accordingly, we hold that the trial court exercised the proper restraint in denying defendant's motion to dismiss the indictment.

●5 Next, defendant asserts that he was not proven guilty beyond a reasonable doubt because the State's witnesses contradicted themselves and each other, failed to come forward with their stories for 18 years, and lacked any credibility. We disagree.

The trial court found the testimony of Judon and Martin clear, convincing, and credible. Although there was a discrepancy about

where Akins was sitting at the time he was murdered, that difference is minor and can be explained by the passage of time. The trial court heard all the relevant evidence available.

Determinations of the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact. (*People v. Jimerson* (1989), 127 Ill. 2d 12, 43, 535 N.E.2d 889.) Any conflicts in the testimony are to be resolved by the trier of fact. (*People v. Collins* (1985), 106 Ill. 2d 237, 261-62, 478 N.E.2d 267.) Thus, we conclude that defendant was found guilty of Akins' murder beyond a reasonable doubt.

Based on the foregoing, we affirm the circuit court judgment.

Affirmed.

RIZZI and GREIMAN, JJ., concur.