THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KARL A. GALLAHER, Defendant-Appellant.

Fourth District    No. 4—02—0589

Opinion filed June 4, 2004.

1024

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

John P. Schmidt, State's Attorney, of Springfield (Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In February 2002, the State charged defendant, Karl A. Gallaher, with possession of a methamphetamine-manufacturing chemical—namely, anhydrous ammonia (count I) (720 ILCS 570/401(d—5) (West 2002))—and unlawful transportation of anhydrous ammonia (count II) (720 ILCS 5/21—1.5(b—5) (West 2002)). In March 2002, defendant moved to dismiss, alleging that (1) count I failed to state an offense; and (2) he was denied due process because the State destroyed the alleged anhydrous ammonia. The trial court later dismissed count I but denied defendant's motion to dismiss count II.

Following a July 2002 stipulated bench trial, the trial court convicted defendant of count II. The court later sentenced him to 24 months' probation.

Defendant appeals, arguing only that the trial court erred by denying his motion to dismiss count II. We disagree and affirm.

## I. BACKGROUND

On February 1, 2002, a confidential source contacted the Springfield police department and informed officers that defendant intended to steal a quantity of anhydrous ammonia. (Anhydrous ammonia is a "commercial fertilizer of ammonia gas in compressed and liquified form" (505 ILCS 80/3(d) (West 2002); 720 ILCS 5/21—1.5(b—10) (West 2002)).) Around 10 p.m., Sangamon County sheriff's sergeant Wes Barr pulled over a truck near the intersection of Sand Hill and Peoria Road in Springfield. Defendant was in the front passenger seat, and the confidential source was in the driver seat. As defendant got out of the truck, a "coffee[-]style" Thermos fell on the ground. The

confidential source later informed the police that the Thermos contained anhydrous ammonia. During an interview with officers, defendant ultimately admitted that (1) the Thermos contained anhydrous ammonia, and (2) he had been involved in stealing the anhydrous ammonia. The police believed that a Thermos was not a suitable container for transporting anhydrous ammonia, so a Springfield police detective contacted Safety-Kleen Corporation and requested that it pick up and dispose of the anhydrous ammonia. On February 2, 2002, Safety-Kleen transported the anhydrous ammonia to a waste-disposal facility and later disposed of it. No testing of the substance occurred.

Later in February 2002, the State charged defendant with possession of a methamphetamine-manufacturing chemical (count I) (720 ILCS 570/401(d—5) (West 2002)) and unlawful transportation of anhydrous ammonia (count II) (720 ILCS 5/21—1.5(b—5) (West 2002)). In March 2002, defendant filed a motion to dismiss the charging instrument, arguing that (1) count I failed to state an offense because section 102(z—1) of the Illinois Controlled Substances Act does not list anhydrous ammonia as one of the prohibited methamphetamine-manufacturing chemicals (720 ILCS 570/102(z—1) (West 2002)); and (2) he was denied due process because the State destroyed the alleged anhydrous ammonia without (a) performing a chemical analysis of the substance or (b) allowing defendant to obtain a sample for chemical analysis. Following an April 2002 hearing on defendant's motion, the trial court dismissed count I and requested that the parties file memoranda addressing defendant's due process argument.

Later in April 2002, the State filed a memorandum, arguing, in pertinent part, that (1) the anhydrous ammonia, which was being transported in an ill-equipped container, created "an immediate and real danger to the public and to law enforcement officers"; and (2) Springfield police officers followed established guidelines for dealing with toxic and hazardous materials when they requested that Safety-Kleen dispose of the anhydrous ammonia. Attached to the State's memorandum was the affidavit of James O'Brien, the longtime manager of statewide emergency response for the Illinois Environmental Protection Agency (Illinois EPA). O'Brien averred, in pertinent part, as follows:

> (1) He was familiar with anhydrous ammonia, which is a form of ammonia manufactured "to be without any associated water."
>
> (2) Anhydrous ammonia is commercially stored as a liquid at high pressure.
>
> (3) Methamphetamine manufacturing by the "Nazi[-]dope" method requires liquid anhydrous ammonia.

(4) When anhydrous ammonia is released from a pressurized container, the liquid turns into vapor and expands to 850 times the volume of the liquid form.

(5) Such an expansion "presents a forceful rupture hazard if the vapor is tightly confined in a non[ ]pressure container such as consumer coolers or [T]hermoses," and if the expanding vapor is released inside a building, the expansion can quickly fill large areas with toxic and potentially explosive concentrations of ammonia vapor.

(6) Attempting to save a Thermos of anhydrous ammonia would be futile because the liquid would eventually evaporate, and in a closed space, the resulting vapors would create a threat to public health and safety.

(7) Leaking anhydrous ammonia could burn an individual's lungs, cause blindness, or result in death.

(8) Storing or transporting liquid anhydrous ammonia in anything but a pressurized container constructed specifically for that purpose is "extremely dangerous."

(9) Once a person stores anhydrous ammonia in an inappropriate container, "it would be incredibly difficult to put the gas or liquid *back* into an appropriate container that would protect human health or the environment" (emphasis in original).

(10) The Illinois EPA does not have high-pressure pumps that are suitable to "re[ ]contain" anhydrous ammonia in an appropriate container.

(11) The Illinois EPA does not store gases, such as anhydrous ammonia, or test them in its laboratory facilities.

(12) No commonly available means exists for saving a sample of anhydrous ammonia.

(13) In O'Brien's opinion, the prudent approach for disposing of anhydrous ammonia stored in an inappropriate container would be to engage the services of an experienced hazardous materials cleanup contractor, such as Safety-Kleen, which can dispose of the substance at a permitted disposal facility.

Defendant then filed a reply memorandum, alleging, in pertinent part, that it would have been feasible to preserve and analyze the alleged anhydrous ammonia without jeopardizing public safety. Attached to the memorandum was the affidavit of Billy Fairless, a Southern Illinois University lecturer in analytical chemistry. Fairless averred, in pertinent part, as follows:

(1) He worked for the United States EPA from 1973 until 1999, first as an analytical chemist and then as the director of the environmental services division.

(2) "While anhydrous ammonia can be dangerous if not handled

properly, it can be preserved and subsequently chemically analyzed[,] provided it is handled and stored in a controlled environment."

(3) "It would be feasible to preserve anhydrous ammonia in liquid form by storing it at 33 degrees Celsius below zero."

(4) "It would be feasible to subsequently chemically analyze the preserved anhydrous ammonia utilizing [g]as [c]hromatography/ [m]ass [s]pectrometry" technology.

In June 2002, the trial court entered an order denying defendant's motion to dismiss count II (unlawful transportation of anhydrous ammonia), and following a July 2002 stipulated bench trial, the court convicted defendant of that count. That same day, the court sentenced him to 24 months' probation.

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

Initially, we reject defendant's contention that we must review *de novo* the trial court's denial of his motion to dismiss.

■ A trial court possesses the inherent authority to dismiss a charge when the failure to do so would result in the deprivation of due process or a miscarriage of justice. *People v. Newberry*, 166 Ill. 2d 310, 313-14, 652 N.E.2d 288, 290 (1995). Where—as in this case—the trial court's decision to grant or deny a motion to dismiss charges requires the evaluation of evidence to reach a fair and just result, we will review the court's decision under an abuse-of-discretion standard. See *People v. Walker*, 257 Ill. App. 3d 332, 336, 628 N.E.2d 971, 974 (1993) (a ruling on a motion to dismiss based on a due process claim "is entitled to great deference and will be sustained absent a clear abuse of discretion"); *People v. Williams*, 137 Ill. App. 3d 736, 740, 484 N.E.2d 1191, 1195 (1985) (concluding that the trial court did not abuse its discretion by refusing to dismiss charges against the defendant where a "due process violation was not established with certainty"). The mere fact that the court did not hear the testimony of witnesses, but, instead, considered affidavits of experts, does not alter the standard of review. By presenting evidence by affidavit—an efficient procedure for which we commend the parties and the court—the parties apparently agreed that the affiants were trustworthy. Nonetheless, the court was required to evaluate the affidavits and determine which affiant's testimony was more persuasive. Under such circumstances, the court's decision is still entitled to great deference.

In this regard, this case is analogous to *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 76, 767 N.E.2d 314, 323 (2002),

in which the supreme court held that *Frye* issues, including general acceptance of a scientific technique, are reviewed under an abuse-of-discretion standard. This standard of review applies for *Frye* issues even though in conducting a *Frye* evidentiary hearing, the court is not required to strictly comply with rules of evidence and may consider evidence such as affidavits of experts, scientific publications, and law review articles. *Bachman v. General Motors Corp.*, 332 Ill. App. 3d 760, 782, 776 N.E.2d 262, 283 (2002).

## B. The Trial Court's Denial of Defendant's Motion To Dismiss Count II

■ Defendant argues that the trial court erred by denying his motion to dismiss count II. Specifically, relying on *Newberry*, 166 Ill. 2d 310, 652 N.E.2d 288, he contends that the State's destruction of the alleged anhydrous ammonia, without conducting a chemical analysis or allowing defendant to conduct such an analysis, violated his due process rights. We disagree.

If this case were a controlled-substance case (involving cocaine, for example), we would agree with defendant that *Newberry* required dismissal of the charging instrument. However, this is not such a case, and we refuse to extend *Newberry*'s destruction-of-outcome-determinative-evidence rule beyond such standard drug cases. We thus decline to apply *Newberry* to this case, which involves a dangerous substance. To mechanically apply *Newberry* under such circumstances would force the police to attempt to preserve substances that are dangerous and cannot be stored safely.

Defendant correctly points out that in *Newberry*, 166 Ill. 2d at 311, 652 N.E.2d at 289, our supreme court held that when a defendant is charged with possession of a controlled substance and the State destroys the substance in question after defendant has filed a discovery request, dismissal of the charge is mandated by due process. In that case, the initial testing of the substance seized from the defendant yielded a negative result for the presence of drugs, and the State charged the defendant with unlawfully possessing a look-alike substance with intent to distribute. A laboratory test conducted one month after the defendant's arrest indicated that the substance was cocaine. The State then dropped the look-alike drug charge and charged the defendant with various offenses related to the unlawful possession of a controlled substance. *Newberry*, 166 Ill. 2d at 312, 652 N.E.2d at 289. The defendant later timely filed a written discovery motion, pursuant to Supreme Court Rule 412 (188 Ill. 2d R. 412), which included a request to examine all tangible objects that had been seized from him. *Newberry*, 166 Ill. 2d at 312, 652 N.E.2d at 290. A

year later, the parties discovered that an evidence technician had destroyed the substance after he learned that the look-alike drug charge had been dropped and mistakenly assumed that the case against the defendant was over and the substance was no longer needed. *Newberry*, 166 Ill. 2d at 313, 652 N.E.2d at 290.

The *Newberry* court recognized that in *Arizona v. Youngblood*, 488 U.S. 51, 58, 102 L. Ed. 2d 281, 289, 109 S. Ct. 333, 337 (1988), the United States Supreme Court held that when evidentiary material is merely " 'potentially useful,' " the State's destruction of that material constitutes a denial of due process only if a criminal defendant can show that the State acted in bad faith. *Newberry*, 166 Ill. 2d at 315, 652 N.E.2d at 291. The *Youngblood* Court rejected the defendant's due process challenge to his conviction because the destroyed material was not essential to establishing his guilt and the defendant failed to establish bad faith. *Newberry*, 166 Ill. 2d at 314-15, 652 N.E.2d at 291, citing *Youngblood*, 488 U.S. at 57, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.

The *Newberry* court distinguished *Youngblood* because the evidence (the alleged cocaine) was "essential to and determinative of the outcome of the case," not just " 'potentially useful.' " *Newberry*, 166 Ill. 2d at 315, 652 N.E.2d at 291. The court also noted that the defendant had no realistic hope of exonerating himself without the opportunity to have the substance examined by his own experts. *Newberry*, 166 Ill. 2d at 315, 652 N.E.2d at 291. The court thus held that under such circumstances, the defendant was not required to show bad faith on the State's part, and the dismissal of the charges against him was mandated by due process. *Newberry*, 166 Ill. 2d at 317, 311, 652 N.E.2d at 292, 289.

We conclude that *Newberry* does not apply to this case and agree with the Supreme Court of Colorado, which determined that police properly destroyed ether found in the defendant's car, stating as follows:

> "[T]he destruction[-]of[-]evidence rule cannot be applied mechanically in a way that endangers the lives of public safety officers or forces the police to preserve hazardous substances which cannot be stored safely. The purpose of the destruction[-]of[-] evidence rule is to protect the integrity of the truth-finding process and to deter police misconduct. [Citation.] Neither of these policies is furthered by a rule that unnecessarily exposes the police to dangers of chemical explosions. *** We will not impose on the prosecution a duty to preserve high explosives, homemade bombs[,] or dangerous materials if that requirement would endanger lives and the public safety." *People v. Clements*, 661 P.2d 267, 273 (Colo. 1983).

This case does not involve a challenge to the sufficiency of the evidence against defendant. Instead, the sole issue before this court is whether a criminal defendant charged with an offense involving a dangerous substance is entitled to have the charge dismissed if the State destroys the substance without testing it or allowing the defendant to do so. We hold that this determination involves a two-step process.

First, the defendant must show that the destroyed substance was "essential to and determinative of" the outcome of his case, not just "potentially useful." See *Newberry*, 166 Ill. 2d at 315, 652 N.E.2d at 291.

Second, if the defendant makes such a showing, the burden then shifts to the State to show that the destruction of the dangerous substance was necessary. See generally *People v. Dodsworth*, 60 Ill. App. 3d 207, 210, 376 N.E.2d 449, 452 (1978) (in which this court held that when the State destroys evidence "at the heart of the State's case," the State bears the burden of showing that the destruction was either necessary or could be excused); see also *People v. Thompson*, 265 Ill. App. 3d 413, 417-18, 638 N.E.2d 363, 367 (1994) (discussing the two-step burden-shifting process when determining whether a charge should be dismissed due to delay).

If the defendant cannot show that the destroyed substance was essential to and determinative of the outcome of his case, then the defendant must establish bad faith on the State's part. See *Youngblood*, 488 U.S. at 58, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.

In this case, no one disputes that the substance was essential to and determinative of the outcome of defendant's case. Defendant was charged with unlawful transportation of anhydrous ammonia (720 ILCS 5/21—1.5(b—5) (West 2002)), and he could not be convicted of that charge without proof of the content of the substance contained in the Thermos.

The burden thus shifted to the State to show that the destruction of the substance was necessary. Contrary to defendant's contention, the State clearly showed through O'Brien's affidavit that the destruction of the substance (which both defendant and the confidential source admitted was anhydrous ammonia) was necessary. Although Fairless averred in his affidavit that it is "feasible" to preserve anhydrous ammonia by storing it at minus 33 degrees Celsius (minus 27.4 degrees Fahrenheit), he did not indicate that such a storage facility exists or, if it exists, how a Thermos of anhydrous ammonia can be safely transported there.

On this record, we conclude that the State met its burden of showing that the destruction of the anhydrous ammonia was necessary. Ac-

cordingly, we further conclude that the trial court did not err by denying defendant's motion to dismiss count II.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

COOK and MYERSCOUGH, JJ., concur.